CASE 59.—ACTION BY J. T. EARLE, MAYOR OF LATONIA, AGAINST THE LATONIA AGRICULTURAL ASSOCIATION TO TEST THE VALIDITY OF A LIQUOR ORDINANCE.—December 17.

## Earle, Mayor, v. Latonia Agr. Association

Appeal from Kenton Circuit Court.

W. McD. Shaw, Circuit Judge.

Judgment for defendant, plaintiffs appeal—Af-

Intoxicating Liquors—Municipal Regulation—Delegation of Power —Locality of Offense.—Constitution· section 143 authorizes the establishment of a police court in each city and town in the State, with jurisdiction over violations of municipal ordinances and by-laws within the corporate limits of the city or town in which it is established. Ky. Stats., 1903, section 3490, subsection 27, authorizes the council of a city of the fourth class to pass ordinances licensing, permitting, and regulating or restraining the sale of intoxicating liquors within the limits of a city, or restraining or prohibiting the sale thereof within one mile of the limits of such city. Held, That an ordinance of a municipal corporation prohibiting the sale of intoxicating liquors within a half mile of the corporate limits, and further providing that any person violating the provisions of the ordinance should, on conviction in the police court in the city, be fined, etc., and making it the duty of the police to enforce the ordinance, and to arrest all persons violating the same, and to take them before the police judge of such city to be dealt with according to the

ordinance, was void, as in conflict with the constitutional provision.

ORLANDO P. SCHMIDT for appellant.

It will not do for appellee to contend that it was duly licensed by the State and Federal government to sell liquor, and that said chief of police did, on May 31, 1906, arrest four of its "employes" engaged in and about its cafe and bar in selling liquors; first, because it has no authority to engage in such traffic, and, second, because this could not be plead in justification of the offense committed by these four men.

The ordinance is not void simply because the city council did not deem it necessary for the peace and good order of the local community (which has grown to, and stretches around, the north and east sides of the race course), to prohibit the traffic throughout the entire belt over which its discretionary (not mandatory) power extended.

It might be contended with equal force that local option laws are void because they do not prohibit over the entire State.

The Legislature can license in one locality and prohibit in another, and, having this power, could delegate it to cities of the fourth class.

The Constitution does not attempt to fix the territorial limits of cities, but leaves this altogether to the Legislature. It permits the Legislature to confer exclusive jurisdiction on police courts to hear and determine all infractions of ordinances. The police had authority to arrest Brizzolari, etc., under the warrant within two miles of the city limits, so that, when these men were brought before the police judge, they were within the city limits, in the narrowest sense of the term, and the jurisdiction of the police court was complete.

It is therefore respectfully submitted that the rulings on the special demurrer and motions to elect and the final judgment appealed from are erroneous, and should be reversed.

## AUTHORITIES CITED.

Ky. Stats., sections 3490, subsection 27, 3513, 3596, 3164; Civil Code, sections 18, 83, 379; Constitution, sections 156, 143; Board of Trade of Falmouth v. Watson, 5 Bush, 660; Banklick T. P. Co. v. Phelps, 81 Ky., 616; Goldsmith v. Owen, 95 Ky., 420; Schwearman v. Comth., 99 Ky., 298; Koch v. Comth., 27 Ky. Law Rep., 122; Ingram v. Fuson, 26 Ky. Law Rep., 863; Lehman v. Beeler,

24 Ky. Law Rep., 174; Dillon on Municipal Corps., section 338 (2d Ed.).

HARVEY MYERS for appellee.

## QUESTIONS DISCUSSED.

1. Is the twenty-seventh subsection of section 3490, Ky. Stats., relating to fourth class cities, authorizing the council to license the sale of liquors within the city limits, and to prohibit such sales within one mile outside of the corporate limits, constitutional?

2. Can the city council of a fourth class city, which licenses and permits the sale of liquors within its corporate limits, legally enact an ordinance prohibiting the sale of liquors within a half mile outside of its corporate limits?

3. Can fourth class cities confer by such an ordinance jurisdiction upon the police court of such cities to try persons arrested for violating an ordinance prohibiting the sale of liquors outside the corporate limits?

Three separate and distinct grounds are urged on behalf of appellee, as follows:

First—The statute is void for two reasons.

(a) It is discriminatory on its face.

(b) It is contrary to the Constitution.

Second—If the statute is constitutional, the ordinance enacted under it is void because it does not comply with its terms.

Third—The ordinance is unconstitutional because it attempts to confer jurisdiction upon the police court of the city to try cases originating without the limits of the corporation.

## AUTHORITIES CITED.

Ky. Stats., section 3490, subsection 27; Horr & Bemis Munic. Police Ord., sections 135, 136, 137; St. Louis v. Smith, 2 Mo., 113; State v. Fay, 44 N. Y., 477; Staffey v. Monroe, 135 Ind., 169; 41 Fla., 443; 58 Vt., 207; Daniel v. Richmond, 78 Ky., 542; Fechheimer v. Louisville, 84 Ky., 206; Constitution, section 143; Ingram v. Fusom, 26 Ky. Law Rep., 863; Shinkle v. City of Covington, 7 Ky. Law Rep., 412.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

It appears that appellee is the owner of about 100 acres of land near the city of Latonia, a fourth-class city, but not within its corporate limits; that it has constructed a race course and erected valuable buildings thereon, consisting of a clubhouse, paddocks, stables, etc., at a cost of many thousands of dollars; and that, in connection with its races and exhibitions, it is required to and does accommodate large concourses of people, who gather there to witness trials and tests of speed horses and to see other exhibitions held by it upon the grounds; that for the accommodation of those there assembled it sells refreshments and liquors under a license granted it by the State of Kentucky and by the federal government. On March 6, 1906, the city council of Latonia enacted an ordinance, the three material sections of which read as follows:

"Section 1. That it shall be unlawful for any person, firm or corporation to sell vinous, spirituous or malt liquors or any kind of such liquors, within one-half mile of the corporate limits of the city of Latonia, Kentucky, provided, however, that this section shall not apply to any territory embraced within the corporate limits of the town of Central Covington, or any territory in Campbell county, Kentucky.

"Section 2. That any person, firm or corporation who shall be guilty of violating any provision of section 1 of this ordinance, shall, upon conviction in the police court of said city, be fined in any sum not less than twenty dollars nor more than one hundred dollars, and the cost of prosecution, in the discretion of the court.

"Section 3. That it is made the duty of the chief of police and several policemen, of said city, to see that this ordinance is strictly enforced, and to immediately apprehend any and all persons who may be found violating the provisions of section 1 hereof and take them before the police judge of said city to be dealt with according to this ordinance."

Appellee further alleged that at the time the above ordinance was enacted the city of Latonia did license and permit the sale of such liquors within the corporate limits of the city, and that its grounds and many of its buildings are situated within one-half mile of the corporate limits of the city of Latonia; that appellant, on May 31, 1906, had arrested four employes of appellee engaged in selling liquors for appellee to those congregated upon its grounds, and had taken them before appellant Z. T. Carlton, police judge of the city of Latonia; that he had set their cases for trial on June 2, 1906; and that he would try the cases and enforce the ordinance. It was also alleged that the ordinance is contrary to the Constitution and laws of the State of Kentucky and is void, and that Z. T. Carlton, police judge of the city of Latonia, has not the authority or right to hear, try, or determine the cases or the case of any person arrested for violating the ordinance outside of the corporate limits of the city of Latonia, and charged that, unless appellants were enjoined and restrained from further proceeding under the alleged ordinance to arrest and punish the employes of appellee, they will proceed thereto daily, or with more frequent arrests, trials, and convictions, to the great and irreparable injury and damage to appellee, which would not be susceptible of approximate ascertainment in money. It asked for a writ of prohibition

against the police judge and the other appellants, enjoining and restraining them from proceeding further in the enforcement of the alleged void ordinance. Appellants answered, to which appellee filed a reply.

The real issue formed by the pleadings involves the validity of the ordinance passed by the city council and whether or not the police judge has the legal authority to enforce the ordinance by punishing those who violate it.   It will be seen that the ordinance attempted to prohibit the sale of liquor within one-half mile of the corporate limits of the city of Latonia, excepting, however, from its provisions, a part of another municipality and a territory in Campbell county, and attempted to confer upon the police court of the city exclusive jurisdiction to try persons arrested for the violation of the ordinance.   If this ordinance is valid, and the police judge of the city of Latonia has jurisdiction to try persons violating it, this court cannot interfere to restrain or prohibit the enforcement of it.

The third Constitution of Kentucky, the one in existence when the present Constitution was adopted, contained this provision: "The General Assembly may vest judicial powers, for police purposes, in mayors of cities, police judges, and trustees of towns." It will be seen by this provision that there was no limitation on their jurisdiction. It was left to the General Assembly, without any limitation, to fix the jurisdiction of officials named. Nor did the third Constitution place any limitation upon the General Assembly to prevent it from passing special acts. It then had, as now, power to pass any law not prohibited by the Constitution. The General Assembly, under the third Constitution, by special acts, had given police judges in some cities greater juris-

diction than had been given justices of the peace.
Their jurisdiction was not the same throughout the
State, and some of them were not limited by the
boundary of the city.    Under these circumstances,
and to correct the inequalities and errors mentioned,
section 143 of the Constitution was adopted.    It pro-
vides: ''A police court may be established in each
city and town in this State, with jurisdiction in cases
of violation of municipal ordinances and by-laws
occurring within the corporate limits of the city or
town in which it is established, and such criminal
jurisdiction within the said limits as justices of the
peace have.''    This section confers jurisdiction upon
police courts of cities and towns in cases of violation
of ordinances occurring within the corporate limits
of the cities or towns.

The ordinance in question deals exclusively with
offenses committed outside of the corporate limits
of Latonia, and is based on subsection 27 of section
3490 of the Kentucky Statutes of 1903.    It appears
that the city licenses the sale of liquors within the
limits of the city, and that liquors are sold within
a mile of the limits of the city by others than appel-
lee.    Appellee claims that the ordinance is void
because it (appellee) is discriminated against by so
drafting it as to include its property within the pro-
hibited territory and excluding favored ones engaged
in a like business.    In view of the conclusion we have
reached with reference to the validity of the ordinance
and statute upon which it is based, we deem it un-
necessary to pass upon this question.    Section 143
of the Constitution has been construed by this court
in the case of Ingram v. Fuson, 118 Ky. 882, 26 Ky.
Law Rep. 863, 82 S. W. 606.    It was there held that
the General Assembly had no power, under this sec-

tion of the Constitution, to confer jurisdiction upon police courts to try offenses committed outside of the city or town limits.

Appellants contend that the General Assembly has the right to make one boundary of a city for taxation and other general purposes and another boundary for police purposes, and that this is what the General Assembly did by the enactment of subsection 27 of section 3490, and refers to the case of Falmouth v. Watson, 5 Bush, 660, to sustain the propositon. To this we cannot agree. Section 143 of the Constitution recognizes but one boundary of a city or town, and the jurisdiction of police courts is expressly confined within that boundary. The section deals exclusively with the jurisdiction of police courts in regard to police regulations, and will not permit of another boundary for that purpose. The opinion in the case referred to was delivered in 1869, long before the present Constitution was adopted. At that time the General Assembly was not limited or prohibited from passing such special laws, and the opinion was right under the then existing laws. In our opinion it was the enactment of this class of special legislation that caused the incorporation in the present Constitution of sections 59, against legislation, and 143, limiting the power of the General Assembly in conferring jurisdiction upon police courts of cities and towns.

It is claimed that this construction of section 143 is unfortunate, and it ought to be construed so that a separate boundary might be fixed for police purposes; otherwise around the city limits proper all sorts of crimes will be committed, which will annoy the people residing therein, and they should be permitted to protect themselves in the way provided in the statute referred to. This may be true; but with

that we have nothing to do. Our duty is to see that the Constitution is not violated, and to construe and enforce it as it is written, and we should not bend it to suit what might happen to be the circumstances of the hour. Chief Justice Bronson, in an opinion in the case of Oakley v. Aspinwall, 3 N. Y. 547, 568, expressed in admirable words the respect the judicial and legislative departments of government should have for the Constitution, as follows: ''It is highly probable that inconveniences will result from following the Constitution as it is written; but that consideration can have no force with me. It is not for us, but for those who made the instrument, to supply its defects. If the Legislature or the courts may take that office upon themselves, or if, under color of construction, or upon any other specious ground, they may depart from that which is plainly declared, the people may well despair of ever being able to set any boundary to the powers of the government. Written constitutions will be more than useless. Believing, as I do, that the success of free institutions depends upon a rigid adherence to the fundamental law, I have never yielded to considerations of expediency in expounding it. There is always some plausible reason for latitudinarian constructions which are resorted to for the purpose of acquiring power; some evil to be avoided or some good to be attained by pushing the power of the government beyond their legitimate boundary. It is by yielding to such influences that Constitutions are gradually undermined and finally overthrown. My rule has ever been to follow the fundamental law as it is written, regardless of consequences. If the law does not work well, the people can amend it; and inconveniences can be borne long enough to await that

process. But, if the Legislature or the courts undertake to cure defects by forced and unnatural constructions, they inflict a wound upon the Constitution which nothing can heal. One step taken by the Legislature or the judiciary, in enlarging the powers of the government, opens the door for another, which will be sure to follow; and so the process goes on until all respect for the fundamental law is lost, and the powers of the government are just what those in authority please to call them."

Notwithstanding the construction this court has given section 143 of the Constitution, the people of cities and towns will not be without police protection, and subjected to the annoyance of those who commit nuisances without the limits thereof. By an inspection of the present Constitution it will be observed that the General Assembly is not prohibited from giving police officers of cities and towns authority to make arrest and police territory beyond the limits thereof; and it has given them such authority under section 3495 of the statutes, and this court has construed that section, or one like it, and declared it legal, in the cases of Heather v. Thompson, 78 S. W. 194, 25 Ky. Law Rep. 1554, and Riley v. Grace, 33 S. W. 207, 17 Ky. Law Rep. 1008. Under these authorities the police of cities and towns are not confined in their duties to the boundary of the cities and towns. They, as well as constables, and sheriffs, can arrest persons guilty of offenses and take them before justices of the peace or county judges for their ·trial and punishment, or they can be brought to justice by information filed or indictment and tried in the circuit court. If appellee is committing the offense indicated, let the officials and citizens of the city see to it that it is prosecuted and punished as indicated,

and in that way relieve themselves from the annoyance complained of. It is better to do this than to bend the Constitution to suit their conveniences and desires.

In our opinion the court did not err in granting to appellee the relief sought; hence the judgment is affirmed.