**COMMONWEALTH of Kentucky, Appellant,**

v.

**Jerome J. MONSON, Appellee.**

**No. 92–SC–616–DG.**

Supreme Court of Kentucky.

July 1, 1993.

Rehearing Denied Sept. 30, 1993.

Chris Gorman, Atty. Gen., Pamela J. Murphy, David A. Smith, Perry T. Ryan, Asst. Attys. Gen., Criminal Appellate Div., Frankfort, for appellant.

Fred E. Fischer, Louisville, for amicus curiae, City of Jeffersontown, KY., a Municipal Corp. of the Fourth Class.

Stephen D. Wolnitzek, Smith, Wolnitzek, Schachter & Rowekamp, P.S.C., Covington, for amicus curiae, Kentucky State Lodge Fraternal Order of Police.

John M. Famularo, Stites & Harbison, Lexington, for amicus curiae, Kentucky Ass'n. of Chiefs of Police.

R. Barry Wehrman, Wehrman & Wehrman, Chartered, Covington, for appellee.

SPAIN, Justice.

We granted discretionary review in this case to address the issue of whether KRS 95.740(1) confers county-wide arrest powers upon police officers of fourth-class cities. We now answer the question in the affirmative, reversing a panel of the Court of Appeals, which held that said statute was an "... authoritative rather than a geographic grant of power to arrest."

The case under review arose out of the arrest of the appellee, Jerome J. Monson, during the early morning hours of November 25, 1989, in the fourth-class city of Park Hills, Kenton County, Kentucky. Monson was observed erratically operating a motor vehicle in that city by Rodney Newsom, a police officer of the nearby city of Fort Wright, another fourth-class city located in Kenton County. Officer Newsom radioed Officer Benny Johnson of the Park Hills Police Department, whom he was waiting to meet with anyway, and Officer Johnson arrived on the scene shortly after Officer Newsom caught up with Monson just as he entered the parking lot of his apartment building. Officer Jim Decker, also of the Fort Wright department, was called in to make the arrest and to transport Monson to jail, since he was working the Traffic Alcohol Program that night. Appellee Monson failed the field sobriety tests and, after being arrested and taken to jail, blew a 0.16% on the breathalyzer test.

Following his conviction by a Kenton County District Court jury of DUI and reckless driving, Monson appealed to the Kenton Circuit Court. That court reversed the reckless driving conviction for the reason that the arresting officer never saw the appellant operate his vehicle. The court nevertheless affirmed the DUI conviction, finding the arrest in Park Hills by Fort Wright police

officer Decker to have been legal and the resulting breathalyzer test results admissible. Upon further appeal, the Court of Appeals reversed the conviction for DUI on the grounds that the arrest was illegal and that its fruits; i.e., the breathalyzer results, were inadmissible. The cause was remanded for retrial without such test results.

The statute in question, KRS 95.740(1), states as follows:

> The chief of police and every member of the police force in cities of the fourth and fifth classes may, whether directed to them or not, execute warrants of arrest, processes, subpoenas and attachments for witnesses. They may arrest as prescribed by law for offenses against ordinances or municipal regulations of the city, *and shall have the same power of arrest for offenses against the state as a sheriff.* (Emphasis added.)

It is undisputed that sheriffs have county-wide arrest powers. *Kentucky Constitution,* § 101 provides: "Constables shall possess the same qualifications as sheriffs, and their jurisdiction shall be coextensive with the counties in which they reside." KRS 70.070, which is entitled "Execution and return of process—Territorial jurisdiction," likewise confers county-wide authority on sheriffs. Because sheriffs have county-wide arrest powers, so do police officers of fourth-class cities by reason of KRS 95.740(1).

In deciding whether the reference in KRS 95.740(1) addresses the jurisdictional power of a sheriff to arrest for particular offenses or the geographic or territorial limits of his arrest power, it is helpful to trace the history of the statute. It was first enacted as § 13 of Chapter 241 of The Acts of 1893, entitled "An Act for the Government of cities of the fourth class," and was later codified as Kentucky Statutes § 3495, to wit:

> § 13 The chief of police and every policeman shall have power to execute warrants of arrest, processes, subpoenas and attachments for witnesses, whether the same be directed to them or not. They, and each of them, shall have the same power to arrest as is prescribed by the general law for any offense against the ordinances or municipal regulations of the city, and *the same power*

*of arrest for any offense against the Commonwealth of Kentucky that the sheriff has.* Fees for any services under this section shall be the same allowed by law to the sheriffs and other officers for such services, but shall be paid into the city treasury: Provided, Arrests may be made for drunkenness or disorderly conduct at any time without warrant. (Emphasis added.)

As readily appears, this emphasized language is virtually verbatim to the language of the present KRS 95.740(1); viz., "... the same power of arrest for offenses against the state as a sheriff." This being so, an interpretation of the 1893 language by this Court only fourteen years later, in 1907, controls the present case. In *Earle v. Latonia Agricultural Association,* 127 Ky. 578, 106 S.W. 312 (1907), this Court was concerned not only with the territorial power of arrest of police officers of fourth-class cities (Latonia), but also with the power of such cities to enact and enforce ordinances outside the city limits but within the county. Thus § 14 of Chapter 241 of the 1893 Acts was also under consideration. It provided, "[t]he police jurisdiction *of the city* shall extend to any point in the county within two miles of the boundary of the city." (Emphasis added.) Codified as Kentucky Statutes § 3496, that section referred not to the arrest power of the city police, but rather to the city's enforcement authority of municipal ordinances. Carroll's Kentucky Statutes 1936.

The City of Latonia was attempting to enforce its ordinance beyond its geographic boundaries. The Court observed, "The ordinance in question deals exclusively with offenses committed outside of the corporate limits of Latonia...." 106 S.W. at 313. The Court held that the ordinance and the statute on which it was based (Subsection 27, Section 3490 of Kentucky Statutes 1903) violated § 143 of the Kentucky Constitution by creating "one boundary of a city for taxation and other general purposes, and another boundary for police purposes." 106 S.W. at 314.

In so holding, however, the Court compared the territorial arrest powers of police officers with the authority of a city to enact

legislation with extraterritorial application, recognizing the fundamental difference between the two kinds of authority. In 106 S.W. at 314, the Court stated:

By an inspection of the present Constitution it will be observed that the General Assembly is not prohibited from giving police officers of cities and towns authority to make arrest and police territory beyond the limits thereof; and it has given them such authority under section 3495 of the statutes, and this court has construed that section, or one like it, and declared it legal, in the cases of *Heather v. Thompson,* 78 S.W. 194, 25 Ky.Law Rep. 1554 [(1904)], and *Riley v. Grace,* 33 S.W. 207, 17 Ky. Law Rep. 1008 [1007] [(1895)]. Under these authorities the police of cities and towns are not confined in their duties to the boundary of the cities and towns. They, as well as constables and sheriffs, can arrest persons guilty of offenses and take them before justices of the peace or county judges for their trial and punishment, or they can be brought to justice by information filed or indictment and tried in the circuit court.

Some eighteen years after deciding *Earle,* this Court held in *Benton v. Kentucky Bankers' Association,* 211 Ky. 554, 277 S.W. 858 (1925) that the chief of police of Jackson, a fourth-class city, was legally entitled to share in the division of a reward payable by reason of an arrest outside the city limits but in Breathitt County. The Court recognized that a police officer of a fourth-class city is not *required* to make arrests beyond the city limits elsewhere in the same county, but that such an officer *may* legally do so voluntarily:

It has been held that a town marshal may make an arrest anywhere in his county. *Helm v. Commonwealth,* 81 S.W. 270, 26 Ky.Law Rep. 165; *Heather v. Thompson,* 78 S.W. 194, 25 Ky.Law Rep. 1554; *Riley v. Grace,* 33 S.W. 207, 17 Ky.Law Rep. 1007. The above decisions were based on the charter provisions of towns of the sixth class, while Jackson is a city of the fourth class. But in this respect the charter provisions are substantially the same in both. It would therefore seem that the chief of police of such city may voluntarily make an arrest anywhere in the county, but evi-

dently it was never contemplated that he should be required to leave the city for the performance of his duty; and we are not inclined to think this action is within the scope and line of his duty, in the sense of depriving him of a reward which is otherwise justly earned by him. It follows that J.E. Miller is not precluded from sharing in the reward by reason of his official position.

277 S.W. at 861.

An examination of the statutorily conferred territorial arrest powers of officers of other classes of cities supports our interpretation of KRS 95.740(1). The Kentucky Constitution classifies municipalities into six classes. Ky. Const. § 156. Of these, the five largest classes currently have authority to maintain city police departments. All six formerly had similar authority; however, the statute authorizing sixth-class cities to employ a city marshal (KRS 95.790) was repealed by the General Assembly in 1980. Until then, such town marshals were held to have county-wide arrest powers. See *Helm v. Commonwealth,* 26 Ky.L.R. 165, 81 S.W. 270 (1904).

Under current statutory and case law, the city police of four of the five largest classes of cities have been held to possess county-wide arrest power in the county where the city is located. See *Cook v. Commonwealth,* Ky., 649 S.W.2d 198 (1983), holding such for police in a first-class city, vested under KRS 95.150, "... with all the common-law and statutory powers of constables, except for the service of civil process." Also see KRS 95.-515, stating that police in a second-class city "... may make arrests anywhere in the county in which the city is located, but shall not be required to police any territory outside of the city limits." Also, KRS 95.510 confers upon officers of third-class cities "... the same powers to make arrests, execute process and enforce the laws as constables and sheriffs, anywhere in the county in which the city is located, but they shall not be required to police any territory outside of the city limits." Finally, see KRS 95.786, providing that officers of fifth-class cities "... may make arrests anywhere in the county in which the city is located, but shall not be

required to police any territory outside of the city limits."

As can be seen by the above listing, if we were to affirm the decision of the Court of Appeals, then throughout the Commonwealth only officers of cities of the fourth class, out of the five largest classes of cities, would be denied the power to arrest throughout the county in which their city is located. We do not believe the General Assembly has evidenced any such legislative intent.

This perception is fortified by the fact that an Attorney General's Opinion (OAG 70–287), issued twenty-three years ago, also interpreted KRS 95.740(1) as conferring county-wide arrest powers on police officers of fourth-class cities, yet no legislation has since been enacted amending or repealing this statute.

In accordance with this opinion, the decision of the Court of Appeals is reversed and the decision of the Kenton Circuit Court affirming the conviction of the appellee, Monson, for driving under the influence is affirmed.

All concur except COMBS, J., who dissents without opinion.