## Mason, Jr., v. Manning.

(Decided November 27, 1912.)

### Appeal from Bell Circuit Court.

Reward—Agreement to Pay—Public Policy—Sheriffs—Office and Offi-
cer.—An agreement to pay a deputy sheriff of a county 'wherein
a murder takes place, a reward for investigating the crime, ar-
resting and convicting the murderer, is against public policy and'
void.

N. J. WELLER for appellant.

H. B. JONES for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COM-
MISSIONER—Reversing.

On a Friday afternoon in June, 1909, Hiram Mason
was shot from his horse and killed as he was passing
from Greasy Creek across Pine Mountain to his home
on Big Clear Creek in Bell County, Kentucky.   Late in
the evening his body was found lying on the roadside
about a mile and a half from his home.   His horse was
grazing about a hundred yards from where his body
was found.   On the following Saturday he was buried
in the family burying ground near his home.   At the
burial, appellant, Robert Mason, Jr., announced publicly
that he would give $200 for the arrest and conviction
of the party who killed his brother Hiram.   Appellee,
J. L. Manning, was present at the burial and heard the
announcement.   After the burial Manning went to the
house of Robert Mason, Sr., father of Hiram Mason,
who lived a short distance from the graveyard, and in-
quired of the old man what they proposed to do.   At the
same time he stated that he did not think $200 was
enough and wanted $350 to work up the case and cap-
ture and convict the guilty party.   The old gentleman
referred him to his sons with a statement that whatever
they did would be all right with him.   Manning then

started out to find appellant, and overtook him and others on the county road. Manning made about the same inquiry of appellant, whereupon appellant stated that he did not know what Franklin Mason or the other boys would do, but that he would pay Manning $200 to work up the case and secure the arrest and conviction of the guilty party. On Sunday morning Manning rode to Clear Creek, and fell in with some people who were going to the side of Pine Mountain where Hiram Mason was killed. He examined the ground and noticed near an old stump some footprints made by shoes that were not mates. He also found some empty shells. Manning and Gillis Carter then went across the mountain to the residence of Alex Webb. On investigation they found that Alex Webb's shoes were not mates. Webb became excited and made several contradictory statements. Thereupon, Manning arrested Webb and started to Pineville. While on the way Webb escaped. On reaching Pineville, Manning swore out a warrant for the arrest of Webb, who was afterwards brought in by other parties. At the trial of Webb, Manning was present and testified and gave the prosecution all the information that he had. He produced in court the shoes that Webb had at the time of his arrest. Webb was convicted. On cross-examination it developed that Manning was a deputy sheriff of Bell County when Hiram Mason was killed, and when Webb was arrested and convicted. Manning claims that in addition to his work as deputy sheriff he sometimes did private detective work when called upon.

Manning brought this action against Robert Mason, Jr., and Robert Mason, Sr., to secure the reward of $200. After denying the allegations of the petition, the defendants pleaded in a separate paragraph that Manning, at the time of the rendition of the alleged services, was a deputy sheriff of Bell County, and that it was his official duty as such officer, without fee or reward, except such as was allowed by law, to ascertain who murdered Hiram Mason, and to arrest the murderer. To this paragraph of the answer a demurrer was sustained. Trial was had, and the jury returned a verdict in favor of Manning against Robert Mason, Jr. Judgment was entered accordingly, and Robert Mason, Jr., appeals.

It is insisted by appellant that the trial court erred in sustaining the demurrer to that paragraph of the

answer pleading that appellee was a deputy sheriff of Bell County, and that the services performed by him in connection with the arrest and conviction of Alex Webb were within the scope of his official duties, and that he was therefore not entitled to the reward. It is also insisted that as it appeared in the evidence that appellee was, as a matter of fact, a deputy sheriff at the time of the murder, and of the arrest and conviction of Alex Webb, the court should have granted the peremptory instruction asked for by appellant.

The question presented is, "Is an agreement to pay the deputy sheriff of a county where a felony is committed a reward for investigating the crime, arresting the offender and securing his conviction, enforceable?" From an early day (Bridge v. Cage, Cro. Jac., 103, 79 Eng. Reprint, 89) it has been established, and continues to be the rule, that an agreement to pay money to a sheriff or other public officer for doing what he ought to do, is void and against public policy. Accordingly, a public officer, such as a sheriff, constable or policeman, is not entitled to a reward offered for the arrest or conviction of a criminal where the service performed is within the scope or line of the duties of such office. 34 Cyc., 1753. Such promises are void, not only because of want of consideration, 9 Cyc., 348, but because they are contrary to public policy. 9 Cyc., 497. The above rule was first announced by this court in Marking v. Needy, 8 Bush, 22, and has been uniformly adhered to. Harris v. Beaven, &c., 11 Bush, 258; Riley v. Grace, 17 Ky. L. R., 1007; Smither v. Gentry, 20 Ky. L. R., 174, 42 L. R. A., 302; Heather v. Thompson, 25 Ky. L. R., 1556. The reason underlying the rule is that were it otherwise law officers whose official duty it is to make arrests might be induced to delay making them until rewards should be offered, and consequently criminals might escape arrest or punishment. Smither v. Gentry, supra.

In Smith v. Whildin, 10 Pa. St., 39, 49 Am. Dec., 572, the reason for not enforcing such contracts is thus stated:

"It would open a door to profligacy, chicanery and corruption if the officers appointed to carry out the criminal law were permitted to stipulate by private contract; it would open a door to the escape of offenders by culpable supineness and indifference on the part of

those officers, and compel the injured persons to take upon themselves the burden of public prosecutions.''

Or, as quaintly put in 1 Hawkins, P. C. C. 68, sec. 4:

''If once it should be allowed that such promises (to an officer to pay more for his services than the law allows) could maintain an action, the people would quickly be given to understand how kindly they would be taken, and happy would that man be who could have his business well done without them.''

The same rule applies in the case of a deputy sheriff. Appellee was deputy sheriff, and was acting in his own county, where the offense was committed. The fact that no warrant of arrest had been issued is immaterial. Having reasonable ground to believe that a felony had been committed, appellee had authority to make the arrest, and it was his sworn duty to make it. Subsection 2, section 36, Criminal Code; Smither v. Gentry, *supra*. Nor will the law draw a line of demarcation between the acts of the officer in the capacity of a private detective and his acts as a public officer, and say that for his acts in the former capacity he may recover compensation in addition to that allowed by law. To do so would virtually annul the salutary principle that an agreement to pay money to a public officer for doing what he ought to do is unenforceable; for such an exception would necessarily result in the very evils which the general rule was intended to prevent.

It follows that the trial court improperly sustained the demurrer to the third paragraph of appellant's answer, and also erred in failing to direct a verdict in favor of appellant.

Judgment reversed and cause remanded for proceedings consistent with this opinion.