## Benton v. Kentucky Bankers' Association, et al.

(Decided December 1, 1925.)

### Appeal from Perry Circuit Court.

1. Jury—Issues Presented in Interpleader Suit to Determine Rights of Claimants to Reward were Equitable and Made Proper Case for Trial by Court.—Where bank and association each confessed its liability for reward for apprehending bank robbers, and latter filed answer in nature of interpleader, and but one or two of claimants were claiming an exclusive right to reward, issues were equitable and made a proper case for trial by court; neither side being entitled to a jury as matter of right, result being same if answer were treated as an affidavit under Civil Code of Practice, section 30.

2. Rewards—Peace Officer Making Arrest while Acting Within Line of Duty Cannot Recover a Reward Therefor.—A peace officer who makes an arrest while acting within line of his duty cannot recover a reward therefor, but when not acting within scope or line of his official duties may recover a reward.

3. Rewards—Chief of Police Making an Arrest Outside City Held Entitled to Participate in Reward.—Chief of police of a city of fourth class voluntarily arresting bank robbers in county, but outside the city, held entitled to participate in reward for their capture in view of Criminal Code of Practice, sections 36, 37, since such arrest was not within scope and line of his duty.

4. Rewards—Deputy Sheriff Arresting Bank Robbers for Offense Committed in Another County Held Not Entitled to Participate in Reward.—Deputy sheriff arresting bank robbers without a warrant for offense committed in another county held not entitled to participate in reward offered for their capture, in view of Criminal Code of Practice, sections 36, 37, since it was his duty to apprehend robbers regardless of whether crime was committed in another county.

5. Rewards—Constable Held Entitled to Participate in Reward when Robbers Arrested in Another County.—Constable who did all in his power to arrest bank robbers for offense committed in his county while in his county held entitled to participate in reward offered for their capture, in view of Criminal Code of Practice, sections 36, 37, though arrest was made without a warrant in another county.

6. Rewards—Trainman Held Entitled to Participate in Reward, where Information Given by Him was Contributing Factor in Apprehension and Conviction of Robbers.—Trainman held entitled to participate in reward offered for apprehension and conviction of bank robbers, where information given by him to authorities was contributing factor in robbers' apprehension and conviction, and he attended trial and was ready to assist in their prosecution.

7. Rewards—One Not Entitled to Participate in Reward Offered for Bank Robbers where Doing Nothing that Led to their Arrest.—One held not entitled to participate in reward offered for apprehension and conviction of bank robbers, where it did not appear that he did anything that led to their arrest, or that his participation at time of arrest was of any great consequence.

WILLIS W. REEVES for appellant.

TRABUE, DOOLAN, HELM & HELM for appellee Kentucky Bankers' Association.

COPE & COPE for appellees Miller and others.

WOOTTON, SMITH & WOOTTON for appellee Deaton.

A. H. PATTON for appellee Jennings.

DUFF & EVERSOLE for appellee Deaton.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

The Bank of Vico, in Perry county, was robbed on the 27th day of March, 1924. The State Bankers' Association offers a standing reward of $1,000.00 for the apprehension and conviction of every person committing that offense in this state. In this instance the robbed bank offered an additional reward of $500.00 for the apprehension and conviction of the perpetrators.

Lawrence Harp and Dock Harp were indicted and convicted on this charge in the Perry circuit court, and a number of persons sought to recover the rewards, in a suit brought for that purpose.

Prior to the filing of this suit the bank officials had paid $500.00 (the amount offered by it) to J. E. Miller,

Wm. Haddicks and James Deaton. The Bankers' Association filed an interpleader, alleging that the reward was claimed by several persons and asking permission to pay the $2,000.00 offered by it into court to be paid to whomsoever the court should adjudge. The issues were joined and the law and facts submitted to the court, which confirmed the payment of $500.00 to Miller, Haddicks and Deaton and awarded to them $1,250.00 of the amount paid by the Bankers' Association. He also awarded $500.00 to Allie Deaton and $250.00 to D. B. Deaton and refused the claims of Leonard Benton, Fred Jennings and Nelson Baxter. Leonard Benton appeals. The appellees appear satisfied and no cross-appeal is prayed.

The facts are: On the evening of the 28th, the president of the robbed bank, Jesse Morgan, who lives at Hazard, learned of the robbery. He at once called police headquarters at Jackson over the telephone and gave information of the robbery and of the reward and asked to have all the officers on the lookout for the robbers if they should pass through Breathitt county.

Shortly after noon of the following day Morgan learned that the Harp boys were implicated in the robbery and that one of them had been seen on a railroad train the night before. At that time the telephone lines of the railroad company were the only ones in working order and he had this information sent up and down the line.

Leonard Benton was a conductor on a north bound freight train leaving Hazard about one p. m. on the 29th. He had heard of the robbery and of the reward and had a description of the men and was looking for them. Defective air brakes caused the train to stop at a small station, and on walking to the place of trouble he passed a number of parties along the side of the train who had been stealing a ride. Two of these attracted his attention and after fixing the brakes he walked to the station and gave the agent this information and told him to call the next station, Chavies, and have officers apprehend the suspects upon the train's arrival. This agent conveyed the information to the agent at Chavies and he to a constable of Perry county, Allie Deaton. The train slowed down, but did not stop at Chavies. However, Deaton and some other parties he had with him boarded the train

and ejected several, including the robbers, from it. Deaton continued the search on the moving train and in climbing upon a car encountered them, whereupon they presented their pistols and made him enter the car, threatening to kill him, but later relented, gave him $45.00 and permitted him to alight from the moving train upon his solemn assurance that he would not betray them. The train was a long one and Benton, who was in the caboose, did not come in contact with the officers, though he saw Deaton near the track as the caboose passed him about a mile from the station. Deaton ran back to Chavies and telephoned up the road to the various stations that the robbers were on the train and to be on the lookout for them. He also followed on the next train.

Altro in Breathitt county is a meeting point for several trains and this train took the siding there. At this place Benton inquired of his head brakeman, Racter, if the two parties were still on the train and on being answered in the affirmative the two located them and Racter observed a roll of bills upon one of them. He reported this to Benton, who went up to the station and called the chief dispatcher at Ravenna and asked him to have some officers come down and arrest them. He also asked permission to hold the train until the southbound passenger train No. 3 arrived, which was granted.

Allie Deaton also telegraphed to the First National Bank at Jackson, and the cashier of that institution notified the sheriff of Breathitt county, Mr. Blair, of all these facts and Blair testifies that he informed his deputy, James Deaton, and instructed him to look out for the robbers. James Deaton denies this but admits that he was expecting the robbers to come in on the train at Jackson and was down at the depot looking for them. J. E. Miller, chief of police of Jackson, and Wm. Haddicks were also at the depot and shortly before the arrival of the southbound passenger train, at Miller's suggestion they decided to go down on it and see if they could apprehend the robbers. They went to Altro and were met by Benton, who together with Jennings and Racter had the suspects under surveillance. Benton asked if they were officers and upon being informed that they were told them of the location of the robbers. According to his statement he went with Haddicks on one side of the train directly to one of the suspects and though un-

armed was present at the time of the arrest, the other robber being arrested by Miller on the opposite side of the train. Benton then telephoned the dispatcher and procured permission to carry the officers and prisoners to Jackson, which was done. He also attended their trial and claims that he was ready to assist in their prosecution. The defendants, however, pleaded guilty.

It is claimed by the three men from Jackson that they knew nothing of Benton; that upon their arrival at Altro they immediately went to the suspected persons and arrested them without any assistance from any one; deny that Benton had anything to do with it or that they received any information from Allie Deaton. They carried the prisoners to Jackson that night and on the following day took them to Harlan and delivered them to the custody of the jailer. Jesse Morgan paid them $500.00 offered by the bank, and they were present when the robbers pleaded guilty and accepted 20 years each in the penitentiary. Allie Deaton came to Jackson after they had arrested the defendants and admitted having $45,000.00 which the robbers had paid him. They took $16,045.00 from the robbers and gave it to Jesse Morgan and took his receipt therefor.

Allie Deaton's evidence is along the line above indicated. He discovered the robbers at Chavies; they got the drop on him and he had to beg for his life; upon being ejected from the train he ran back and telegraphed as stated. He followed on the first train but arrived after the arrest. He showed several parties the $45.00 and repaid it to the bank.

Fred Jennings was a railroad man "dead heading" his way home to Jackson. Acting in connection with Benton he had the suspects under surveillance during the time the train was at Altro, something like three hours. Racter the head brakeman corroborated the statements of Benton. The railroad agents at the points above named testified as above indicated. The one at Jackson testified positively that he had advised Miller, Haddicks and Deaton of Allie Deaton's communication before they left Jackson.

D. B. Deaton was at Altro. He claims to have heard of the robbers about ten minutes before train No. 3 came in, and that he tried to get some one to assist him in arresting them; that he was present at the time of the

arrest and assisted one of the officers, covering a robber with a pistol and making him keep his hands up. While there is some corroboration of his statements the weight of the evidence does not indicate that he had much, if anything, to do with the performance.

On this appeal it is urged (1) that the court erred in overruling appellant's motion for a jury trial. (2) That J. E. Miller, James Deaton and Allie Deaton are peace officers and therefore not entitled to share in the reward. (3) That under the pleadings appellant was entitled to a judgment *pro confesso*. (4) That the judgment was flagrantly against the evidence.

(1) The bank and the association each confessed its liability for the reward and the latter filed an answer in the nature of an interpleader asking that it be permitted to pay the funds into court and for the court to adjudge this to the rightful claimant or claimants. Of these, all were claiming the right to participate, but only one or two were claiming an exclusive right to the reward. The issues thus presented were equitable and made out a proper case for trial by the court, neither side being entitled to a jury as a matter of right. Weibler v. Ford, 61 Minn. 398; Burke v. Matson, 34 L. R. A. (N. S.) 924; 15 R. C. L., page 221. The practice would be the same if the answer is treated as an affidavit under the provisions of sec. 30 of the Code, as this merely takes the place of the former bill of interpleader and is of the same general nature. Newman's P. & P., secs. 186 and 454. True where the right of a single claimant to a reward is contested the right to a jury trial has been recognized. Stephens v. Brooks, 2 Bush 137; Marking v. Needy, &c., 8 Bush 22; Mason v. Manning, 150 Ky. 805. Such right has also been recognized where each of the claimants is asserting an exclusive right to the entire fund. Davis v. Watkins, 2 Bush 224. However, whether under the statute or the common law, if the fund is to be partitioned between different claimants the matter is of equitable cognizance. It follows that the court did not err in overruling the motion for a jury trial.

(2) It is well settled that a peace officer who makes an arrest while acting within the line of his duty cannot recover a reward therefor. Mason v. Manning, 150 Ky. 805; Collier and Tucker v. Green, 205 Ky. 361; 34 Cyc. 1753; Somerset Bank v. Edmunds, 11 L. R. A. (N. S.)

1170 and notes. But when not acting within the scope or line of his official duties he may recover the reward. Collier and Burke cases, *supra,* and cases cited therein.

As stated, the crime was committed in Perry county and Allie Deaton was a constable of that county; the arrest was made, without a warrant, and in Breathitt county. James Deaton was deputy sheriff of that county and J. E. Miller was chief of police of the city of Jackson, its county seat, and their right to participate in the reward depends upon whether, in making the arrest, they were acting in the line of official duty.

Under our statutes a peace officer may make an arrest (1) ''In obedience to a warrant of arrest delivered to him.'' (2) ''Without a warrant when a public offense is committed in his presence or when he has reasonable grounds for believing that the person arrested has committed a felony.'' (3) ''Such peace officer with a warrant of arrest when in the actual pursuit of the offender may cross the county line for the purpose of making the arrest in an adjoining county.'' (4) ''A private person may make an arrest when he has reasonable grounds to believe that the person arrested has committed a felony.'' Criminal Code, sections 35, 36, 37.

It has been held that a town marshal may make an arrest anywhere in his county. Helm v. Com., 26 Rep. 165; Heather v. Thompson, 25 Rep. 1554; Riley v. Grace, 17 Rep. 1007. The above decisions were based on the charter provisions of towns of the sixth class, while Jackson is a city of the fourth class; but in this respect the charter provisions are substantially the same in both. It would, therefore, seem that the chief of police of such city may voluntarily make an arrest anywhere in the county, but evidently it was never contemplated that he should *be required* to leave the city for the performance of this duty, and we are not inclined to think this action is within the scope and line of his duty, in the sense of depriving him of a reward which is otherwise justly earned by him. It follows that J. E. Miller is not precluded from sharing in the reward by reason of his official position.

For James Deaton it is argued that the offense was committed in another county and no warrant of arrest had been delivered to him for the offenders and that he was under no legal duty to search for them; that it would be his duty to make the arrest if he saw the offenders

and had reasonable grounds to believe they were guilty of a felony, but that this was the extent of his duty. This principle has been applied to officers arresting a fugitive from justice from another state, Collier v. Tucker *supra*, but we are not inclined to extend the doctrine further. The statute draws no distinction between offenses committed in the county of the officer's residence and those committed in another county of this state. The state is the sovereign whose laws the officer is sworn to uphold. If he learns that its laws have been violated and that the offender is within his jurisdiction it is his duty to apprehend the law-breaker regardless of whether the crime was committed in his own or in a different county. We conclude that James Deaton as deputy sheriff of Breathitt county could not participate in the reward, but this would hardly apply to Allie Deaton. It will be observed that the statute authorizes a peace officer armed with a warrant in the actual pursuit of an offender to cross the county line and follow him into an adjoining county to make the arrest, but not otherwise. If under any other circumstances he *bona fide* makes an arrest outside his county, he does it as a private citizen and not in the line of his duty, Jones v. Van Bever, 164 Ky. 80, and it would seem he would be entitled to participate in the reward as a private citizen. No doubt where the officer has an opportunity to arrest the offender in his own county, if by strategem or subterfuge he should permit him to cross the county line and then arrest him in another county in order to obtain the reward he should be denied a recovery. In this case Allie Deaton did all in his power to arrest the robbers while in his county, indeed risked his life in so doing, and he is not to be criticised for failing to arrest them while therein, so it would follow, if he is otherwise entitled to participate in the reward, it should not be denied on account of his official position.

(3) The pleadings are not as definite as they should have been; there are two cases and the captions of the various claims are styled indiscriminately, but issues were drawn upon them all, and the rights of the various parties can be clearly determined by them.

(4) Treating the action as an equitable one and bearing in mind the conclusions reached above that James Deaton was not entitled to recover, it remains to be determined what would be an equitable judgment upon the

facts. Clearly the arrest was actually made by the three parties from Jackson; it is equally clear that Benton was present, and the weight of the evidence is to the effect that he accompanied the officers to the place of arrest. Allie Deaton was not present but there can be no doubt that both he and Benton were contributing factors in their apprehension and conviction. Benton first discovered them and gave information that they were on his train. Through this Allie Deaton came in contact with them and though overpowered by them he both telegraphed and telephoned for assistance and pursued at the first opportunity. Later Benton confirmed his suspicions and at Altro telephoned an urgent request for officers to make an arrest, and while he did not detain the robbers he kept them under surveillance until the arrival of the officers two and one-half hours later. Under such circumstances he was entitled to the assistance of the officers and no doubt they acted upon the information thus received. While the officers carried the prisoners to jail, Benton and Allie Deaton attended the trial and were ready to assist in the prosecution.

Under the circumstances it would seem that J. E. Miller and William Haddicks should be allowed the sum of $750.00 each for their services in making the arrest. Leonard Benton and Allie Deaton should be allowed the sum of $500.00 each for their services. James Deaton for the reasons indicated ought not to share. The same may be said of D. B. Deaton, as it does not appear that he did anything that led to their arrest or that his participation at the time was of any great consequence.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.