## Blanton v. Osborne.

(Decided June 2, 1931.)

FORESTER & CARTER for appellants.

J. B. WALL for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

Appellants instituted this action in the Harlan circuit court against the appellee, and in their petition allege that they are the owners in fee simple and in the actual possession of a tract of land in Harlan county, which tract is described in the petition. The description covers more than three typewritten pages, and it is unnecessary to incorporate same in this opinion.

They allege that they and those under whom they claim title to the boundary have been in the actual, peaceable, continuous, and adverse possession of same, and claiming same as their own for more than 15 years next before the commencement of the action. They further allege that on September 20, 1927, Elizabeth Saylor executed and delivered to the appellee a deed of conveyance to a tract of land bounded as follows: "Beginning at a Black Walnut, standing in the edge of the branch and running with branch northwardly to a cross fence at Boreing's corner; thence up the ridge to the top of said ridge at a dog-wood; thence to the top of the mountain at Jesse Blanton's line; thence with Jesse Blanton's line and a cross fence back to the branch; thence down the branch to the beginning, containing ten acres more or less . . . "; that the tract claimed by appellee lies wholly within the boundary of the land owned by appellant; that the conveyance to appellee is without right, and confers no title upon her, but that it casts a cloud upon the title of appellants to the boundary of land set out in their petition, and injures the salable value thereof; that under pretended claim of title appellee has entered upon said tract of land and engaged in cutting and injuring the growth of timber, and is attempting to erect a house thereon, and, unless restrained, will continue said actions, to the great and irreparable injury of appellant; that appellee is hopelessly insolvent, and has

no property subject to execution, and any damage or waste she may commit will be a total loss to appellant.

The prayer of the petition is for a judgment canceling the deed from Elizabeth Saylor to appellee and to enjoin appellee from entering upon or from cutting down any timber or from erecting a house upon the land claimed by appellants. By answer, appellee, traversed the allegations of the petition, and denied that appellant owned any part of the land described in the petition that covers or laps on the tract of land conveyed to her by Elizabeth Saylor, and which is referred to and described in the petition.

In a second paragraph, appellee sets up her deed from Elizabeth Saylor to the boundary of land described in the petition, and alleges that she and those under whom she claims title have been in the actual, peaceable, and adverse possession of the entire boundary for more than 15 years next before the institution of the action; that the claims appellants are making to the tract of land are a cloud upon her title, and she prays that the petition be dismissed; that the title to her land described in the answer be quieted and appellants be required to release all claims thereto. The issues are completed by a reply controverting the affirmative allgations of the answer.

It is asserted in the brief for appellants' counsel that both parties claim under S. W. Saylor as a common source of title, and that therefore it only remains to be determined which side has shown the better title to the land in controversy. This is denied by attorney for appellee, who claims title under S. C. Saylor. Appellants do trace their title back to a deed from S. W. Saylor and Fannie Saylor, his wife, to Vincent Boreing, dated August 22, 1892, and appellee traces her title back to a deed from S. (Solomon) C. Saylor and Rebecca Saylor, his wife, and Silas W. Saylor and Lavinia Saylor, his wife, to Elizabeth Saylor, dated June 23, 1881.

While the record does not so disclose, we assume that Silas W. Saylor and S. W. Saylor, grantor in the deeds referred to, is the same person. There is evidence conducing to show that the tract of land claimed by appellee is included in the boundary as described in appellants' deed under which they claim title and also in the boundary conveyed from S. W. Saylor and wife to Vincent Boreing as described in the deed. The evidence

for appellee as well as the description in her deed indicates that the tract of land to which she makes claim is included in the boundary conveyed to her grantor, Elizabeth Saylor, by Solomon C. Saylor et al.

The tract of land in controversy is situated on what is known as the Gabe Fultz branch, and extends westwardly to the top of the ridge between that branch and Saylor's creek. On the opposite side of the Gabe Fultz branch is a dividing ridge between it and the Low Gap branch. On the bank of the former branch is a black walnut tree which appears to be recognized by all as a corner common to all the boundaries and surveys in controversy.

The description in the deed from Solomon C. Saylor et al. to Elizabeth Saylor is as follows:

> "Beginnng on top of the ridge of a beech and service on the south side of the creek; thence down a straight line to a black walnut standing near the branch thence with the branch down a cross fence; thence with the cross fence to the top of the ridge to two dog-woods; thence with the top of the fork ridge so as to include all the land on the Gabe Fules branch."

By a deed dated March 30, 1907, Elizabeth Saylor conveyed to J. M. Blanton a tract of land containing 82.6 acres, but out of which she reserved 2 acres, which was therein described. In the deed, the land is referred to as "being the same land conveyed by deed from S. W. Saylor, a brother of the first party, and S. C. Saylor, father of the first party, dated June 23, 1881."

Appellants contend that by that conveyance Elizabeth Saylor conveyed all the land she acquired from Solomon C. Saylor, except the 2 acres which she reserved. Elizabeth Saylor, who was introduced as a witness for appellee, testified that she did not convey to Blanton all the land conveyed to her by her father and brother.

W. R. Denham, an engineer, who by agreement was appointed to go up on the land and make a survey showing the various contentions, prepared a plat which is filed in the record. This plat shows the land reconveyed from Elizabeth Saylor to J. M. Blanton, and locates the 2 acres reserved in that conveyance. It also locates the boundary lines as contended for by appellants and the

boundary claimed by appellee. The engineer testified, and gave as his opinion, that the tract of land in controversy was not included in the conveyance from Solomon C. Saylor et al. to Elizabeth Saylor. According to his opinion, the beginning corner in the conveyance is on the top of the ridge between the Gabe Fultz branch and Saylor creek, and the boundary lines run from that point to the walnut on the Gabe Fultz branch, thence down the branch a short distance to a cross-fence; thence with the cross-fence to the top of the ridge between the Gabe Fultz and Low Gap branches; thence around the ridges to the beginning, so as to include the land conveyed by Elizabeth Saylor to J. M. Blanton.

Appellee's attorney contends that the beginning corner in the conveyance from Solomon C. Saylor et al. to Elizabeth Saylor is on the top of the ridge between the Gabe Fultz branch and the Low Gap branch, and that the lines called for run from that point to a walnut on the Gabe Fultz branch; thence down the Gabe Fultz branch to a cross-fence on the west side thereof; thence with that cross-fence to two dogwoods on the top of the ridge between the Gabe Fultz branch and Saylor's creek; thence with the ridge to the point of beginning; so that the boundary includes the land claimed by appellee and also the boundary conveyed by Elizabeth Saylor to J. M. Blanton.

The engineer admits that, to start at the point indicated by attorney for appellee and reverse the calls, the boundary would include the land claimed by appellee, but he testified that the beginning point of the survey contended for by appellee would not be on the south side of the creek. So far as the plat discloses, the beginning point indicated by the engineer on the ridge between the Gabe Fultz branch and Saylor's creek is not on the "south side of the creek," as it would be west of the Gabe Fultz branch if that branch runs north and south as the plat indicates, and we assume it would be east of Saylor's creek, which, however, is not shown on the plat. The point contended for by appellee's attorney might, as appears from the plat, be south of Low Gap branch.

Steve Hopkins was introdced as a witness for appellee, and testified that he was 68 years of age, and had known Elizabeth Saylor and the boundary of land which she owned and claims since he was a small boy; that he was on the land the day he gave his deposition. The

calls in the deed from Solomon C. Saylor et al. to Elizabeth Saylor were read to him, and he was asked if he had made any search to find the service and beech trees referred to in the deed. He replied that he had found such trees on the ridge between the Low Gap branch and the branch upon which the Widow Saylor lives, and from the markings they had the appearance of being corner trees; that he followed a line down to the large walnut tree on the branch and found marks along on the timber, and also found some of the ground rails of an old fence line; that he knew the line referred to in the next call from the walnut tree down the branch to a cross-fence and stated that the line ran down to "Daddy Levi's place" (this reference evidently being to the lands owned by Levi Saylor); that he knew and could locate approximately where the cross-fence led from the branch toward the top of the ridge which separates it from Main Saylor's creek, and remembered that it passed two dogwoods and went to a sulphur spring, and joined another fence at the creek; that the dogwoods he remembered were close together, and what he called or termed twin dogwoods, and were near the crest of the ridge; that the cross-fence about which he was testifying is the one referred to in the third call in the deed, "thence with the cross fence to the top of the ridge of two dog-woods," and that this line was about 14 steps below the point where appellee started to build her house. He testified that he was not acquainted with the next line called for in the deed; that Elizabeth Saylor and Ben Saylor claimed the land above the cross-fence where appellee had started to build her house, and Silas Saylor claimed the land below that fence.

Jerry Saylor, who lives in Lee county, Va., and who is 68 years old, testified that he lived on what was commonly called the Ben Saylor or the Gabe Fultz branch, when Ben Saylor and Elizabeth Saylor, moved there; that at the time he was about 15 or 16 years old; that he was with Silas Hopkins, and found the beech and service referred to by Mr. Hopkins, and the marked line down to the walnut on the branch; that he also remembered the fence running from the Gabe Fultz branch toward the top of the ridge in the direction of Saylor creek, and this line of fence was a little below the point where appellee started to build her house.

Elizabeth Saylor testified that she had listed and paid taxes on the tract of land in controversy every

year. Some of appellants testified that it has been included in the assessment of the land claimed by them, and they have paid taxes on it since they received the deed to the tract in which it is included. Each of the parties have produced much and substantial proof to sustain their respective claims as to record title as well as to title by adverse holding, and there is an irreconcilable conflict in the evidence.

On the one side, it is urged that Elizabeth Saylor conveyed to Blanton all the land which was conveyed to her by Solomon C. Saylor and S. W. Saylor. On the other, it is as consistently urged that S. W. Saylor and S. C. Saylor conveyed to her all the land they owned on the Gabe Fultz branch, and that one or the other of the grantors owned the land in controversy, and it was not included in the conveyance to Blanton.

The chancellor on final hearing dismissed appellants' petition, and also dismissed appellee's cross-petition. This appeal is from the judgment dismissing the petition, and there is no appeal or cross-appeal from the judgment dismissing the cross-petition.

In view of the confusing and conflicting state of the evidence, a doubt would necessarily remain as to any judgment that might have been rendered by the chancellor. In common-law actions tried by the court without the intervention of a jury, the court's finding is given the same effect as the verdict of a properly instructed jury, but in equitable actions, where the judge sits as a chancellor, his finding is not given the same effect.

While the finding of the chancellor is entitled to some weight, this court will consider and weigh the evidence for itself, and will not hesitate to set aside the finding of the chancellor if found to be contrary to the weight of the evidence. But where, as in this case, the evidence is such as to leave the mind in doubt as to questions of fact, the finding of the chancellor will not be disturbed. Hollingsworth v. Avey, 182 Ky. 334, 206 S. W. 493; Combs v. Casebolt, 233 Ky. 192, 25 S. W. (2d) 365; Hensley v. Hensley, 230 Ky. 575, 20 S. W. (2d) 444.

The judgment of the chancellor in this case is not against the weight of the evidence, and therefore should not be disturbed.

Judgment affirmed.