## Kentucky Bankers Ass'n et al. v. Cassady.

### Froh et al. v. Cassady et al.

(Decided March 17, 1936.)

FRANKLIN S. FITCH, LEO CIACIO, and H. E. EBERENZ for appellants.

TRABUE, DOOLAN, HELM & HELM and NELSON HELM and ROBERT T. CROWE and GUTHRIE F. CROWE for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Prior to September 27, 1926, until February 15, 1932, the Kentucky Bankers Association offered a reward for the arrest and conviction of any person robbing a bank which was at the time of the robbery a member of the association. On February 15, 1932, it caused notice to be published in newspapers and posted in every bank for the benefit of which the reward was offered that it had withdrawn its offer of $1,000 and offered a reward of $750 on similar terms. Later, on December 12, 1932, it withdrew all offers of reward for the arrest and conviction of any person robbing a member bank. Again, on December 23, 1932, it offered, advertised and gave notice in like manner that it offered a reward of $500 for the arrest and conviction of each person robbing, or attempting to rob, one of its member banks.

The Pewee Valley State Bank was on the 27th day of September, 1926, a member of the Kentucky

Bankers Association and one of the guarantors of the reward. It was robbed on that day. At the time it was robbed Ira M. Froh, John B. McGillicuddy, A. W. Barmore, and Rudy Camentz were policemen of the city of Louisville. One or more of them were called to the office of the chief of police, and informed of "a bank holdup at Pewee Valley." Officer Cammack went to the bank immediately and talked to those in charge. He obtained all ascertainable information. They claim they induced the employees of the bank to visit next morning the detective's office in Louisville and furnished them with pictures of Wines and Price, whom they identified as two of the men engaged in the holdup. .Subsequent investigations were made by the policemen during the following month. Later a bank at Indianapolis was robbed, and the men who did it were arrested at Atlanta, Ga., for the holdup of a bank at that place. The policemen claim that in 1929 or 1931 they imparted to M. O. Cassady the information contained in their files, and also that the men who robbed the Pewee Valley Bank had been identified. Cassady and Pollock dispute much of their testimony. Further than this, that which the policemen did or said was of no consequence, as it neither directly nor indirectly had anything to do, or any connection, with anything that led to the arrest and conviction of Wines. The terms of the reward were for the arrest and conviction of each person guilty of robbing a bank. It is very plain that no one of the policemen was entitled to any portion of the reward for the arrest and conviction of Wines, and the trial court properly so decreed. Benton v. Kentucky Bankers' Association, 211 Ky. 554, 277 S. W. 858; McClaughry v. King (C. C. A. Ark. 1906) 147 F. 463, 7 L. R. A. (N. S.) 216.

The duty devolves upon us to determine on the facts and the law whether Cassady is entitled to the reward, either of $1,000, $750, or the $500.

Previous to the robbing of the bank of Pewee Valley, Cassady had been sheriff of Oldham county, and thus had acquired experience in uncovering crime and locating criminals. He was at La Grange at the time the bank was robbed. At the time Wines and associates were returned to Indianapolis, he was at Martinsville, Ind., where he remained for about three weeks.

While he was there, photographs of Wines and associates in crime were published in the newspapers with the statement they were the four men charged with robbing the bank in Indiana, which were seen by Cassady. As soon as he returned home, he interviewed Mr. Pollock, the cashier of the bank, and began to endeavor to identify the robbers. One of the men charged with the robbing of the Pewee Valley Bank had previously lived in Louisville and had a criminal record. At the November election, 1929, Cassady was elected sheriff, and entered on the duties of the office January 1, 1930. Thereafter he corresponded with the chief of police of Indianapolis and endeavored to get photographs of the robbers. He made a trip to Indianapolis to obtain their photographs and failed, but shortly thereafter he received same from the department of the chief of police at Indianapolis. Between the date of the robbery and the beginning of his term of office, he continued his investigation of the case "all the time." After receiving the photographs of the robbers, he carried them to the officers of the bank, who identified Wines. Thereafter he procured the indictment of Wines for the crime of robbing the Pewee Valley Bank. As soon as the indictment was returned, he obtained a copy of it and a bench warrant, and mailed them to the warden of the prison in which Wines was confined at Michigan City, Ind., the receipt of which was acknowledged by him with the information that Wines had been notified of his indictment in the Oldham circuit court and when he was paroled he (the warden) would notify him (Cassady) by wire. Later, he received notice by wire of the day Wines would be paroled. Thereupon he procured a requisition, went to Michigan City for him, and, as and when he was discharged from prison, he executed the requisition by taking him into actual custody, brought him back to La Grange, and delivered him to the jailer. He entered a plea of guilty in January, 1934, and was sentenced to the reformatory at Frankfort, where he is now confined, for the crime of robbing the Pewee Valley Bank. At the time Cassady was performing the services outlined above, he had information of the reward offered by the state bankers' association, and his efforts were induced by the hope and expectation on the arrest and conviction of Wines of receiving it.

It was the finding of the circuit court on the facts that Cassady was entitled to the reward of $750, and a decree was accordingly entered therefor against the state bankers' association. It is here insisted that Cassady did nothing toward identification, apprehension, or conviction of Wines, except as the sheriff of Oldham county, and that therefore whatever he did in respect thereto was done as an officer, "acting within his own jurisdiction," whose legal duty it was to do that which he did. It argues that Cassady's merely identifying, receiving, and returning Wines from another state to the jailer of Oldham county, do not constitute an arrest, within the meaning of the term, because he was commissioned at the time by the Governor as his agent and acting under a requisition.

The principle based on public policy that an officer cannot lawfully receive or recover a reward for the performance of a service which it is his duty to discharge is too well established and universally recognized to be subject to doubt or debate. Marking v. Needy, 8 Bush, 22; Riley v. Grace, 33 S. W. 207, 17 Ky. Law Rep. 1007; Smitha v. Gentry, 45 S. W. 515, 20 Ky. Law Rep. 171, 42 L. R. A. 302; Heather v. Thompson, 78 S. W. 194, 25 Ky. Law Rep. 1554; Mason v. Manning, 150 Ky. 805, 150 S. W. 1020, 1021, 43 L. R. A. (N. S.) 131; Benton v. Kentucky Bankers' Ass'n, supra; Martin Fiscal Court v. Runyon, 222 Ky. 260, 300 S. W. 629.

> The reason for the principle is:
> "It would open the door to profligacy, chicanery, and corruption if the officers appointed to carry out the criminal law were permitted to stipulate by private contract. It would open a door to the escape of offenders by culpable supineness and indifference on the part of those officers, and compel the injured persons to take upon themselves the burden of public prosecutions."

Mason v. Manning, supra.

It is equally as well established that a public officer with the authority of the law to make an arrest may accept an offer of a reward or compensation for acts or services performed outside of his bailiwick or not within the scope of his official duties. Collier v.

Green, 205 Ky. 361, 265 S. W. 812; Benton v. Kentucky Bankers' Ass'n, supra; Kasling v. Morris, 71 Tex. 584, 9 S. W. 739, 10 Am. St. Rep. 797; Hayden v. Songer, 56 Ind. 42, 26 Am. Rep. 1; Davis v. Munsen, 43 Vt. 675, 5 Am. Rep. 315; Kinn v. First National Bank, 118 Wis. 537, 95 N. W. 969, 99 Am. St. Rep. 1012; Marsh v. Wells-Fargo & Co. Express, 88 Kan. 538, 129 P. 168, 43 L. R. A. (N. S.) 133; Davis v. Millsap, 159 Mo. App. 167, 140 S. W. 751.

The bankers' association in its brief concedes the rule to be that an officer acting outside of his jurisdiction or not within the scope of his official duties, rendering services materially aiding in the identification, apprehension, arrest, and conviction of a felon, is entitled to the reward, but insists that the facts in this case do not bring it within this exception to the general rule.

In its brief it quotes section 42, Criminal Code of Practice, which defines the term "arrest" thus:

"An arrest is made by placing the person of the defendant in restraint, or by his submitting to the custody of the person making the arrest."

On this definition it argues Cassady "had not, and could not, have placed the person of the robber in restraint because others had already done so, and were continuing to exercise exclusive authority over him. The robber could not have submitted to the custody of" Cassady, because, "in the first place he did not have the custody of himself to submit. It had theretofore been taken from him by the state of Indiana. And in the second place" Cassady "was not there present to receive it, nor had he prior to 1933, any legal authority to receive it." To sustain this argument it cites especially McClaughry v. King (C. C. A. Ark. 1906) 147 F. 463, 7 L. R. A. (N. S.) 216. The petition in that case shows that the defendant, who was sheriff of Johnson county, Ark., on the occasion of the robbery of the bank, offered a reward of $2,750 for the arrest of each of the parties convicted of bank robbery, and thereafter the plaintiffs discovered that one West had been arrested by the police force of Evansville, Ind., for vagrancy, and, being informed that he was suspected of being guilty of the Johnson county

robbery and knowing that the reward of $2,750 had been offered for his arrest, notified the sheriff that West was under arrest in Evansville under an assumed name. The sheriff, acting on that information, immediately went to Evansville, apprehended West, and took him back to Johnson county, where he was subsequently tried and convicted. The plaintiffs, at the request of the sheriff, furnished evidence which largely contributed to the conviction of West. A demurrer was interposed to the petition and sustained on the ground that it failed to state facts sufficient to constitute a cause of action. It was the conclusion of the court that "furnishing information merely which leads to an arrest is not making the arrest." The judgment was affirmed.

The distinction between that case and the present one is factual, which is disclosed by our resume of the statement of the petition in it and the facts in the present one.

An officer before he is inducted into office, or while in office, may become entitled to a reward by services theretofore or thereafter rendered. Cornwell v. St. Louis Transit Co., 100 Mo. App. 258, 73 S. W. 305.

The evidence in behalf of Cassady establishes that he performed material services to effect the arrest of Wines, both before and after his election and qualification as sheriff of the county, which led to his conviction. Those performed after his election and qualification were not within the scope of his duties as sheriff. His official duties as sheriff were those defined by the statutes and confined to the county in which he was acting as sheriff. His procurement of the requisition and trip to the prison at Michigan City and executing it at the gate of the prison were out of the line of his duties as sheriff. We know of no statute, and none is cited to us, imposing a duty on a sheriff to obtain a requisition for a fugitive and execute it as it directs. Plainly, in procuring the requisition, going to Indiana, and causing Wines to submit to his custody, were not statutory duties imposed upon him as sheriff. In doing so he was acting in the capacity of a private citizen merely, and not as a sheriff. The fact that he was sheriff at the time of his executing the requisition added nothing to his authority under

the requisition. Gregg v. Pierce, 53 Barb. (N. Y.) 387; Davis v. Millsap, supra.

In Davis v. Millsap a sheriff elected after an escape beyond his jurisdiction of the accused and the offering of a reward for his arrest, who caused the capture and return of the fugitive, was held entitled to the reward, notwithstanding the rule of public policy forbidding the payment of a reward to an officer; the ground being that his efforts in locating and causing the arrest of the fugitive were outside of his jurisdiction and extraordinary services for which no compensation was allowed him as sheriff.

The bankers' association argues that Cassady's receiving Wines in Indiana after he was discharged from prison was in accordance with a previous "gentleman's agreement" between him and the warden of the penitentiary at Michigan City, and his assuming the custody of Wines, under the authority of the requisition, was not an arrest, within the meaning of this term, as it is defined by section 42, Criminal Code of Practice.

The section provides two methods of making an arrest: (a) By the officer "placing the person of the defendant in restraint"; or (b) by the defendant "submitting to the custody of the person making the arrest." Wines' submitting himself to the custody of Cassady, though acting under the authority of the requisition, was an arrest within the meaning of this term as it is used in this section. Those in charge of the Indiana prison at Michigan City at no time had the custody of Wines because of his participating in the robbery of the Pewee Valley Bank nor under the indictment therefor by the grand jury of Oldham county. He was first in custody thereunder when he submitted himself to Cassady, acting at the time in his capacity as a private citizen, on the authority of the requisition of the Governor of the commonwealth of Kentucky. Otherwise, Wines has been convicted and sentenced to the state reformatory in Kentucky without having been arrested under the law of this state for the crime for which he is now serving time in the state reformatory. The bankers' association argues that the extraordinary services of Cassady, as detailed by him, are insufficient to establish his right to

recover the reward. His testimony is corroborated by Pollock, and, as presented to us, it is uncontradicted. The action was brought at law and tried by the court without the intervention of a jury. His finding of facts are entitled to that weight which the law requires us to give to a verdict of a properly instructed jury. Greensburg Deposit Bank v. Commonwealth, 230 Ky. 798, 20 S. W. (2d) 979; Commonwealth v. Johnson, 123 Ky. 437, 96 S. W. 801, 29 Ky. Law Rep. 897, 124 Am. St. Rep. 368, 13 Ann. Cas. 716; Carter County Commercial Bank v. Eifort, 179 Ky. 232, 200 S. W. 342; Southern R. Co. of Ky. v. Frankfort Distillery Co., 233 Ky. 771, 26 S. W. (2d) 1025; Wells v. Board of Drainage Com'rs, etc., 237 Ky. 539, 35 S. W. (2d) 886; Blanton v. Osborne, 239 Ky. 389, 39 S. W. (2d) 698.

To justify a reversal on an issue of fact, it is not enough that it is our view he should have reached a different conclusion. It is only where it appears to a reasonable degree of certainty that the trial court erred in his finding of facts that we are authorized to disturb it. The rule is that the finding of the facts by the circuit court will not be disturbed by us where we entertain only a doubt as to the propriety or correctness of his finding. Harris v. Ash, 24 S. W. 868, 15 Ky. Law Rep. 679; Elliott v. Elliott, 234 Ky. 257, 27 S. W. (2d) 963; Alsip v. Perkins, 236 Ky. 5, 32 S. W. (2d) 565.

Our view is that the facts adduced fully sustain the finding of the trial court.

Wherefore the judgment is affirmed.