CASE 23—ACTION BY VALLANDINGHAM & GENTRY AGAINST THE CON-
TINENTAL INS. CO., &C., ON A POLICY OF FIRE INSURANCE.—SEPT. 25.

# Continental Insurance Co. v. Vallandingham & Gentry.

### APPEAL FROM OWEN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANTS APPEAL.    AFFIRMED.

FIRE POLICY—ADJUSTMENT OF  LOSSES—STIPULATION  FOR  APPOINT-
MENT OF APPRAISERS—CONSTRUCTION—VALIDITY—WAIVER.

Held:  1.  Where a fire policy stipulates that the ascertainment of the amount of a loss shall be made by the insured and the insurer, and, if they differ, then by appraisers, there must be a real difference before a demand for appraisers can properly be made, and the act of the insurer in merely declining to pay the sum fixed in the itemized account of the insured is not a disagreement.

2.  The stipulations in a fire policy that if the insured and insurer differ in estimating the amount of a loss, appraisers shall be appointed, and that no suit shall be brought on the policy until after full compliance by the insured of the foregoing require-

Continental Ins. Co., &c., v. Vallandingham & Gentry.

ments, are valid, and the failure of the insured without good excuse to submit the adjustment of the loss to appraisers is a good defense to a suit on the policy.

3. The stipulations in a fire policy providing for the adjustment of the amount of a loss, if the insured and insurer differ, by appraisers, and prohibiting a suit on the policy until the insured has complied with the foregoing requirement, are inserted wholly for the protection of the insurer, who will not, therefore, be allowed to use them oppressively or in bad faith.

4. Where a fire policy stipulates for the adjustment of the amount of a loss, in case the insured and insurer differ, by "two competent and disinterested appraisers," the insured and insurer each selecting one, and the two electing a competent and disinterested umpire, the insurer, by selecting as one appraiser a partisan willing and anxiously persistent in serving the insurer's interests, waives the appraisal by appraisers, and the insured may decline to renew the arbitration at the hands of such appraiser or any other.

CHAS. STROTHER, JOHN S. GAUNT, FRANK C. GREEN AND BARGER & HICKS, ATTORNEYS FOR APPELLANT.

(No original brief for appellant in the record.)

LINDSAY & BOTTS AND W. S. PRYOR, FOR APPELLEES.

PROPOSITIONS AND AUTHORITIES.

1. The conditions of forfeiture in a policy of insurance, as indeed the entire instrument, are to be construed most strongly against the company. The company prepares it and is familiar with its details, and many conditions. Its ambiguities are to be resolved against the company; and must be liberally construed in favor of the insured, and when words are without violence susceptible of two interpretations, that which will cover the loss must in preference be adopted, the rule being to avoid a forfeiture. Text-book authorities: May on Insurance (2d ed.), secs. 174, 175, 176 and 367; Wood on Insurance, sec. 61. Kentucky authorities: Mutual Benefit Life Ins. Co. v. First Nat. Bank, 24 R., 580; Phoenix Ins. Co. v. Spiers & Thomas, 79 Ky., 294; American Accident Co. v. Rugert, 94 Ky., 580; American Central Ins. Co. v. Hughes, 22 R., 1549; American Central Ins. Co. v. Heaverin, 18 R., 190. Authorities of other States and United States courts: Calton v. Springfield Fire Ins. Co., 1 Summ. (U. S.), 434; Dow v. Hope Ins. Co., 1 Hall (N. Y.), 174; Lamb v. F. C. Bluff Ins. Co., 70 Iowa, 228; Hoffman v. Aetna F. Ins. Co., 32 (N. Y.), 405; Western Ins. Co. v. Cropper, 32 Pa. St., 351; Riply v. Aetna Ins. Co., 29 Barb. (N. Y.), 552;

Continental Ins. Co., &c., v. Vallandingham & Gentry.

Westfall v. Hudson River F. Ins. Co., 2 Dun (N. Y.), 490; Loud v. Citizens' Mut. Ins. Co., 2 Gray (Mass.), 221; Galveston Mfg. Co. v. Howard F. Ins. Co., 5 Gray (Mass.), 497; Albion Lead Co. v. Williamsburg Ins. Co., 2 Fed. Rep., 479; Sayles v. N. W. Ins. Co., 2 Curt (U. S.), 612.

2. The provision in the policy, "in the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss and the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when an appraisal has been required," is not a condition precedent. Bergman & Co. v. Commercial Union Ins. Co., 12 R., 942; Sun Mutual Ins. Co. v. Crist, 19 R., 308; Chenowith v. Phoenix Ins. Co., 12 R., 232; Bodenfield v. Massachusetts M. A. Co., 13 L. R. A., 263. Authorities upon those conditions of the policy which rest and abide upon the same basis as the above condition: Scottish Union & National Ins. Co. v. Strain, 24 R., 958; American Central Ins. Co. v. Heaverin, 16 R., 95; Citizens' Ins. Co. v. Crest, 22 R., 47; Niagara Fire Ins. Co. v. Heflin, 22 R., 1212; Mechanics' & Traders' Ins. Co. v. Floyd, 20 R., 1538.

3. The provision in the policy that "in the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss the parties thereto shall pay the appraiser respectively selected by them and shall bear equally the expenses of the appraisal and umpire," coupled with the provision that "no suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity, until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire;"

Continental Ins. Co., &c., v. Vallandingham & Gentry.

"this company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required," is a condition which is absolutely void, null and of no effect.

(a) It is contrary to the law of appraisal under laws of Kentucky, viz.: Civil Code, sec. 451; Ky. Stats., secs. 69, 70, 71, 72 73; Germania Ins. Co. v. Rudwig, 80 Ky., 223; Imperial Ins. Co. v. Kiernan, 83 Ky., 474; Mutual B. L. Ins. Co. v. Davies' Exrs., 87 Ky., 547.

(b) It ousts the courts of their jurisdiction, on the subject of appraisal as provided in the statutes and code, supra.

(c) It is intended to, and does, oust the courts of their jurisdiction, and goes farther—it substitutes a tribunal to be erected by the parties (really the company) is against public policy and void. Story's Equity Jurisprudence, sec. 670; May on Insurance, sec. 492; Leach v. Republic Ins. Co. (N. H.), 9 Rep., 181; Street v. Rigby, 6 Ves., 815, 818; Thompson v. Charnock, 8 T. R., 139; Connor v. Drake, 1 Ohio St., 168; Waters v. Taylor, 15 Ves., 10; Home Ins. Co. v. Mass., 20 Wall., 445; Wellington v. Mackintosh, 2 Atk., 569.

(d) It places the court in the very awkward position by compelling the parties to come into court for the purpose of having decided the question, Shall we keep each other out of court?

(e) It does not, and it should not, prevent an adjustment in court of competent jurisdiction. German-American Ins. Co. v. Etherton, 41 N. W. Rep., 406.

4. While still insisting that the provision in the policy relative to an appraisal is not a condition precedent nor is it a condition, any violation of which could furnish the appellants any defense whatever, yet, if this court should so hold, it by no means follows that the judgments are erroneous, for that the obligation, if any resting upon the appellees was waived by the appellants in the following respects, viz.:

(a) "Before the appellants could insist upon any such condition they must show that they *admitted* the validity of the policy and their *liability* under it, and that the *only* question open between the parties was the question of damages." Wood on Insurance, sec. 430, p. 748; Hickerson v. German-American Ins. Co., 32 L. R. A., 173; Mentz v. Armenia F. Ins. Co., 78 Penn. St., 478.

(b) A denial of liability waives condition as to appraisal. Ins.

Continental Ins. Co., &c., v. Vallandingham & Gentry.

Co. of America v. Forwood, &c., 12 R., 846; Same v. Same, 13 R., 261; Hickerson v. German-American Ins. Co., 32 L. R. A., 173.

(c) Failure of arbitrators to agree upon an umpire is an abandonment, especially so when the fault is upon the part of the appraiser appointed by the company, and prevents the companies from objecting that the action was brought before appraisal. Brock v. Dwelling House Ins. Co., 26 L. R. A., 623; McCullough v. Phoenix Ins. Co., 113 Mo., 606; Bishop v. Agricultural Ins. Co., 130 N. Y., 488; Uhrig v. Williamsburgh C. F. Ins. Co., 101 N. Y., 362; Bradshaw v. Agricultural Ins. Co., 137 N. Y., 137.

(d) An arbitration having failed by reason of the appraisers having failed to agree upon an umpire, the insured is not bound to enter into a new attempt at arbitration even if the insurers are willing. Chapman v. Rockford Ins. Co., 28 L. R. A., 405; Uhrig v. Williamsburgh F. Ins. Co., 101 N. Y., 362; Bishop v. Agricultural Ins. Co., 130 N. Y., 488; Davenport v. Long Island Ins. Co., 10 Daly, 538, 539; Howard Ins. Co. v. Hocking, 115 Pa., 416.

(e) An appraiser chosen by the insurer can not demand that an umpire be selected who does not live in the vicinity of the property nor one wholly incompetert, and when done is a waiver of the condition. Hickerson v. German-American Insurance Co., 32 L. R. A., 172; McCullough v. Phoenix Ins. Co., 113 Mo., 606; Niagara F. Ins. Co. v. Bishop, 154 Ill., 9; Uhrig v. Williamsburgh C. F. Ins. Co., 101 N. Y., 362; Chapman v. Rockford Ins. Co., 89 Wis., 572; cases cited under (d).

(f) The appraiser for the insurer must be free from bias as must also be the appraiser for the insured, but when it is shown and known that the appraiser for the insurer was not free from bias, but was not only willing for the companies to misrepresent the facts as to him, but did himself so do he was not in law an appraiser and therefore the company not having selected an appraiser can not demand an appraisal. Chapman v. Rockford Ins. Co., 89 Wis., 572; Brock v. Dwelling House Ins. Co., 102 Mich., 583.

(g) After the appraisers failed to select an umpire the fact that the adjuster for the appellant companies did then and there demand of the appellees that they make out and furnish to each of the appellant companies an itemized list showing sound value and loss of each and every article, knowing that so to do required much time, expense and loss, and which was done was a waiver of the condition to arbitrate. Pretzfelder v. Merchants' Ins. Co., 44 L. R. A., 424; 123 N. C., 164; Manhattan Ins. Co. v. Stien, 5 Bush, 657; Aetna F. Ins. Co. v. Tyler, 16 Wend. (N. Y.), 85; Bodle v. Chenango C. M. Ins. Co., 2 Comst. (N. Y.), 53;

St. Louis Ins. Co. v. Kyle, 11 Mo., 278; O'Niel v. Buffalo F. Ins.
Co., 3 Comst. (N. Y.), 122; Clark v. New England Ins. Co., 6
Cush. (Mass.), 342; Ins. Co. v. Connor, 5 Harris (Pa.), 136;
McMasters v. West Chester C. M. Ins. Co., 25 Wend. (N. Y.),
383; Hibernia Ins. Co. v. Meyer, 39 N. J., 482; Mercantile Ins.
Co. v. Holthaus, 43 Mich., 423; Planters' Ins. Co. v. Deford, 38
Md., 382; Tisdale v. Mut. Benefit Ins. Co., 91 U. S., 238; Mason
v. Citizens' Ins. Co., 10 W. Va., 572; Madsden v. Phoenix Ins.
Co., 1 S. C., n. s., 24.

(h) The appellants having in their several answers denied all
the allegations of the petition, especially all, liability and all
damage, any and all objections as to the arbitration clause of
the policy became and was thereby waived. Hicks v. British
America A. Co., 162 N. Y., 284; 32 L. R. A., 424; White v. Mid-
dlesex R. Co., 135 Mass., 216; Horton v. Sayer, 4 Hurlst & N.
643; Lee v. Page, 30 L. J. Ch., 857; Edwards v. Aberayron Mut.
S. Ins. Soc., L. R. Q. B. Div., 563.

, REPLY BRIEF BY ATTORNEYS FOR APPELLANT.

The learned counsel for appellee, who for the first time ap-
peared in this case in this court, was doubtless impressed with
the fact that the damages claimed by appellees, and for which
judgment was rendered in the lower court, was somewhat extrav-
agant, to say the least of it, when he was confronted with the
fact that this was a stock of goods and merchandise in a small
country store, in a small country town or village of only thirty
or forty people, where merchants as a general thing would not
think of carrying stock of goods, &c., of greater value than five
or six thousand dollars; the trade, the business, would not justify
more, but when he realized that this was not a claim for the
destruction of the goods or any part thereof, but only for the
damage to this stock by moving it out of the house across the
street and carrying back again, no damage by fire or water used
in, putting out the fire, he felt called upon both in his written
brief and oral argument to labor the question as to the value of
the goods and the amount of damage. Counsel was also doubt-
less impressed with the peculiar circumstances and the peculiar
relationship existing between the parties Vallandingham & Gen-
try, and the parties they selected to appraise, arbitrate and um-
pire this matter.

Counsel for appellees did not tell the court that Boerner, the
man they selected first as appraiser lived within three or four
miles of this store and in partner with Alexander; also running
a country store, playing magistrate and trading generally.
Whether he carried the same amount of insurance, in proportion

to the amount of goods that Vallandingham did, the record does not show. Nor did counsel say anything about the fact that Boerner went over to the appellee's store after the night of the fire and actually, in connection with Hill & Wood, who came from Carrollton, some fifteen or twenty miles, in another county, agreed on an amount of damage and stated in writing what they would do or say as to the amount of damage, and gave said writing to appellee; nor did counsel for appellees tell you that afterward when the insurance companies demanded that the question as to the amount of damage should be settled by arbitration that the appellees selected as their arbitrator Mr. Boerner, this man who had so interested himself as to come over from his place and agree with Vallandingham & Gentry as to what he would say the damage should be, nor did the counsel for appellees tell the court that when the insurance companies sent their adjuster alone to meet with the appellees and together with the arbitrator selected by the companies and Mr. Boerner, this disinterested arbitrator and appraiser selected by the appellee that the appellee appeared at that time and place, not only in person, but by attorney; that the appellee had actually then employed a skillful and artful attorney and had him there on the ground to manage, control and direct what should be done, nor did the counsel for appellee tell the court that when the appellees were called on as per agreement to select or indicate the name of some disinterested, impartial, unbiased, good man who had no opinion in the matter or any bias at all, these appellees, or rather their chosen arbitrator, Boerner, suggested the names of Hill and Wood, and his partner, Alexander, the very men who had come voluntarily, or at least had come before this, some fifteen or twenty miles and together with him had already not only agreed as to what they would say and do, but had stated it in writing to these appellees, all of which was at that time unknown to these appellants or their adjuster or appraiser; nor did the counsel for appellee tell you why or give any explanation why it was that Hill and Wood were selected and brought or came from Carrollton beforehand to where these goods were in order to qualify themselves either as arbitrators or umpires, nor has any explanation been given as to why they were required to give to appellees a written statement as to what they thought ought to be done as regards the amount of damage, or what they would do, nor has any explanation been given as to why this examination and inspection was secretly made (so far as appellants are concerned) by Boerner, Hill & Wood and the secret guarded so well that the appellants nor their adjuster did not know anything about it until these names were suggested,

and before accepting, the adjuster made inquiry and learned from outsiders that such was the fact. There were several good men, storekeepers, well qualified to estimate and fix the value and amount of damages, much nearer the place where these goods were than Hill and Wood. Why were not some of these selected and why were they rejected when suggested by the appellants for umpire, and what explanation has been given why judgment in this case was rendered for the extreme amount, in fact, the whole amount claimed over $4,000, when, in addition to the facts and circumstances proven and not denied, showing that it is contrary to custom and in conflict with the experience of men in a little hamlet or village to carry a stock of goods or merchandise of any such value as claimed by appellees, but it is actually proven that the said stock of goods, &c., was not damaged more than $500 or $600, if that, and the whole lot of goods not of greater value than $5,000 or $6,000? So it is incumbent upon my distinguished friends, the counsel for appellees, to show or explain how it is that such an amount of damage has been sustained by the carrying out and taking back said stock of goods, wares, &c., even if it rained when so much of the stock was composed of articles (harness, hardware, &c.), that could not have been seriously injured.

We now call the attention of the court to all these facts as shown by the record, some that there is really no dispute about, viz.: That this was a stock of goods, wares and merchandise in a small village of only thirty or forty people; that there were a number of country stores similar to this situated within five or ten miles of this store, and that usually merchants in country towns and stores like this carry stock of not greater value than $5,000 or $6,000; that this stock was composed of hardware, harness, dry goods, but the dry goods consisted in greater part of overalls and goods that as a general thing would not be seriously injured or damaged by rain and that not an article was burnt, destroyed or injured by the fire in any way, or any water used in putting out the fire, no articles were even lost, but the whole damage claimed is such as was sustained in carrying the stock out of the building a short distance across the street and then carrying it back; while the stock was being carried back there was a sprinkle of rain, not what we ordinarily call a shower, but a drizzle, not enough to wet the goods and do any serious damage.

Now the counsel for appellants insist that in the very nature of the case it was utterly impossible for the stock to have been damaged or injured to anything like the amount claimed, and when you consider these facts and circumstances in connection with the sworn statement of the witness who examined thor-

Continental Ins. Co., &c., v. Vallandingham & Gentry.

oughly the stock after the fire and who says that the whole dam-
age would not exceed five or six hundred dollars, we do not
believe this court will hesitate to say that the judgment rendered
by the lower court was not only exorbitant, but that it is an
outrage on the interest of these appellants, and should be set
aside for that reason, if for no other.

If the appellees had any standing in court, if there were no
conditions in the policy to be complied with which preceded their
right to file suit, or if they had complied fully with all the condi-
tions, yet we insist that this judgment should not be permitted
to stand and the appellees reap a clear profit of at least $3,000 or
$3,500 simply because these several insurance companies are the
parties on one side and the appellees, Vallandingham & Gentry,
country merchants, with a lot of relations and friends living in
the county of Owen and adjacent counties, are on the other side.

We insist that a fair administration of justice as between these
parties not only authorizes, but demands that this judgment
should be set aside.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

Appellees effected an insurance for $6,000 with appel-
lants, six fire insurance companies, upon a stock of general
merchandise at Wheatley, Ky. By the reason of the burning
of an adjacent building, threatening the one containing the
insured goods, appellees removed the goods into the street
and to a nearby lot. In the excitement, hurry, and reck-
less manner of handling by the crowd the goods were badly
damaged by being soiled and otherwise abused. These suits
are to recover the amount of the damage, laid at $4,000.
The principal defense is that the insured failed and refused
to submit the amount of their loss or damage to arbitra-
tion or appraisement, as required by the policies. All the
policies are alike in this particular. Their form is what
is known as the "New York Standard Policy." The clause
in question is as follows: "This company shall not be lia-
ble beyond the actual cash value of the property at the
time any loss or damage occurs, and the loss or damage
shall be ascertained or estimated according to such actual

cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or if they differ, then by appraisers as hereinafter provided, and the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy. . . . In the event of disagreement as to the amount of the loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser selected by them and shall bear equally the expenses of the appraisal and umpire. . . . And the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required. . . . No suit or action on this policy for the recovery of any claim shall be sustained in any court of law or equity until after full compliance by the insured with all the foregoing requirements. . . . This policy is made and accepted subject to the foregoing stipulations and conditions." The fire occurred on the night

of November 1st. The insurance companies were promptly notified of the loss, and sent adjusters. Failing to agree upon the amount of the loss, on December 7th following the insurers and the insured entered into an "agreement for submission to appraisers," the material part of which, so far as affects the question now in hand, is as follows: "This agreement made and entered into by and between Vallandingham & Gentry, of Wheatley, Kentucky, of the first part, and the insurance company or companies whose name or names are signed hereto, of the second part, each for itself and not jointly, witnesseth, that C. G. Boerner and T. J. Boyd shall appraise and ascertain the sound value of and the loss upon the property damaged and destroyed by the fire of November 1, 1900, as specified below. Provided, that the said appraisers shall first select a competent and disinterested umpire, who shall act with them in matters of difference only. The award of any two of them, made in writing, in accordance with this agreement, shall be binding upon both parties to this agreement as to the amount of such loss. It is expressly understood that this agreement and appraisement is for the purpose of ascertaining and fixing the amount of sound value and loss and damage only to the property hereinafter described, and taken into consideration every article on schedule attached hereto, whether totally or partially destroyed, and is to be in settlement of the entire loss, and shall not determine, waive or invalidate any other right or rights of either party to this agreement." Boerner was selected by the insured, and Boyd by the insurers. Boerner was a merchant living in a village some few miles from Wheatley. Boyd was a merchant living at Columbus, Ohio. The arbitrators spent most of the day of December 7th in trying to agree upon an umpire, but failed. All names then proposed by each

were rejected by the other. About 2 or 3 o'clock in the afternoon Boerner announced that they were unable to agree on an umpire, and signed an indorsement to that effect on the appraisal agreement. Boyd did not sign it, but did not then offer to make further effort toward an agreement. Boyd and the adjuster for the insurance companies left together. That evening, after they had arrived at the railroad station some miles from Wheatley, Boyd wrote to Boerner, offering to reopen the matter. Boerner responded some days later that he had nothing more to do with it, and that the insured had opened their store (which had been kept closed since the fire), and begun selling the goods, and that it was, therefore, impossible to make an appraisal. Later Boyd offered to Boerner to accept as umpire one of the persons whom Boerner had offered at the first meeting. Boerner peremptorily declined to act further. The insurers wrote, in answer to letters from the insured inclosing the proof of the loss and itemized statements thereof, insisting that Boyd and Boerner should continue to act as arbitrators, and should complete the appraisal as provided in the agreement of December 7th. This was refused by the insured. No other specific objection was made or intimated as to the amount of damage claimed, or touching any item of it. The companies refused to pay, because of the failure to have the appraisal made, and these suits followed.

It is not clear that appellants were entitled to an arbitration under their contracts in this case. The policies provide that the amount of loss or damage was to be fixed by the agreement of the parties, and only in event of a difference was there a right to demand an appraisal. The insured promptly furnished complete itemized statements, showing in detail the values claimed by them, and the

amount of loss or damage asserted. Whether the articles were fairly valued in their sound condition was a matter easily enough to be ascertained by those familiar with the markets of such goods. It does not appear that appellants' adjuster ever expressed an opinion or made such an examination as would warrant it, before his testimony in this suit, that could be made the basis of intelligent action by the insured. A general proposition to pay so much in the aggregate smacks more of a proposition to compromise than one to compensate. Arbitrarily rejecting the insured's estimate without an earnest intention and effort to make a settlement upon the basis first fixed in the policies, in order that vexatious delays and questionable diplomatic advantages might be gained in the matter of arbitrators, to lessen the sum that should be paid for the actual loss, is contrary to both the letter and the spirit of the contract. That the insurers merely declined to pay the sum fixed in the schedule and itemized accounts of the insured is not a disagreement, or differing, as contemplated by the contract, so as to authorize a demand of appraisal. It should have been a real difference, based upon the facts, which should have been candidly and fully submitted for acceptance by the other side. However, in the preparation of this case the parties have treated it as one where the difference between the insured and the insurers had occurred.

Appellees insist that the agreement to submit to arbitration is void. An agreement to submit a possible controversy to arbitration, made before the controversy has arisen, if it involves the determination of the right of recovery, both as to law and facts, is void, because it tends to oust the courts of their jurisdiction, and substitutes a contract tribunal in the stead of the one provided by law for the trial of lawsuits. But the courts have held with marked unan-

imity that an agreement to submit the determination of some fact involved in a controversy to arbitrators, or to some third person as a referee, is not an invalid provision; and, where the agreement makes the award or finding a condition precedent to a right of action, it is enforceable, in that the failure, without good excuse, to submit the question as provided, is a good defense to a suit upon the contract. Joyce on Insurance, section 3232 *et seq.;* May on Insurance (3d Ed.), section 493; Hamilton v. L. & L. & G. Ins. Co., 136 U. S. 242, 10 Sup. Ct. 945, 34 L. Ed., 419; U. S. v. Robeson, 9 Pet., 319, 9 L. Ed., 142. The arbitration clause in insurance policies issued upon personal property, if lived up to in the spirit that justifies their encouragement by law, is a serviceable method of settling the question of loss or damage. While the facts are yet fresh, and the damaged articles are to be seen, it is reasonable to suppose that impartial men, familiar with the character and value of such goods in that community, can, by personal inspection, and by the use of their judgments and experience, more nearly come to a true valuation than any number of men not on the scene, inexperienced, in every probability in the business of valuing such articles, trying to get at the values upon the testimony often of biased or incompetent or careless witnesses. This clause of the policy was inserted wholly for the protection of the insurer. The courts have allowed and encouraged it as an inexpensive and not unjust check upon the danger of overvaluation and fraud by dishonest insured property holders who have sustained loss by fire. But the insurer will not be permitted to misuse this clause oppressively, or in bad faith. To prevent such, when the insurer so misuses it, it ought to be held a waiver by it of that provision.

From the record we find that the person selected by ap-

Continental Ins. Co., &c., v. Vallandingham & Gentry.

pellants as their appraiser had served many times in that capacity before, and as many as three times before for one of the appellants. This fact alone need not be inconsistent with his impartiality. But his conduct throughout this transaction was more like that of an employe than of a disinterested person. That he was brought from such a remote point, at great expense, undoubtedly, to the insurers; that he was willing, and even anxiously persistent, in serving their interests, as a partisan would; that his examination of the injured goods affected his judgment exactly as it did the paid adjuster of the companies, fixing the amount of the damage at $600, when all the other witnesses, many of them apparently disinterested and equally qualified, placed it at $4,000; that he was directed and counseled with by appellants' adjuster, and submitted to him the correspondence and other information gained bearing on the attempt to arbitrate the loss—all convince us that this person did not have the qualification implied in the contract; that is, a discreet, disinterested, impartial man. This fact was evidently known to the insurers or to their adjuster having this settlement in charge. That an improper advantage was sought by them in making this selection is equally evident, if we can accept the judgment and opinion of every other witness in the record, except these two representatives of appellants, concerning the amount of the damage. The evidence of the extent of damage is convincing. An adjuster may be, and ought to be, more competent than the ordinary merchant, and equally as honest, in fixing such valuations. But the great preponderance of the evidence in this case seems to be against the valuation fixed by appellants' adjuster.

We may say in passing that the arbitrator selected by appellees seems to have been equally as partisan as the other.

But, if a person for whose benefit a clause in a contract is inserted would have the advantage of it, he must bring himself within its terms, and will not be excused because the other party has likewise failed. Unless the insurer asks for the arbitration or appraisal before suit brought, the failure to appraise is not a defense. Sun Mutual Ins. Co. v. Crist, 19 R., 305, 39 S. W., 837; Bergman & Co. v. Commercial Union Ins. Co., 12 Ky. Law Rep., 942; Chenowith v. Phoenix Ins. Co., Id., 232; Scottish Union and National Ins. Co. v. Strain, 24 R., 958, 70 S. W., 274. And when the insurer demands the appraisal, it must in good faith nominate a competent, disinterested person as appraiser, before it can defend upon the ground that the insured has failed to keep that part of his contract. Chapman v. Rockford Ins. Co., 89 Wis., 572, 62 N. W., 422, 28 L. R. A., 405; Brock v. Dwelling House Ins. Co., 102 Mich., 583, 61 N. W., 67, 26 L. R. A., 623, 47 Am. St. Rep., 562. Having once waived the appraisal by its conduct, the insurer can not require that the matter in dispute be again submitted to arbitrators. It was, therefore, within the legal right of appellees to decline to renew the arbitration at the hands of Boyd and another, or any other appraisers. McCullough v. Phoenix Ins. Co., 113 Mo., 606, 21 S. W., 207; Chapman v. Rockford Ins. Co., supra; Uhrig v. Williamsburgh Fire Ins. Co., 101 N. Y., 362; 4 N. E., 745.

The judgment of the circuit court was in conformity to these views, and is, consequently, affirmed.

Petition for rehearing by appellant overruled.