## Willett et al. v. Robertson's Administrator et al.

(Decided May 7, 1935.)

200

WOODWARD, HAMILTON & HOBSON for appellants.

W. F. GRIGSBY and H. M. GRIGSBY for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

C. D. Robertson, Sr., a resident of Springfield, Ky., died in December, 1930, and his son C. D. Robertson, Jr., was appointed as his administrator. At the time of his death, C. D. Robertson, Sr., owned a building in Springfield in which for many years he had conducted a drug store and C. D. Robertson, Jr., who worked for him, continued to operate the drug store until the consummation of the contract involved in this action.

On February 18, 1933, C. D. Robertson, Jr., as administrator of the estate of C. D. Robertson, Sr., as party of the first part and Frank B. Willett, and J. B. Williams and Billie Mudd doing business as a partnership under the firm name of the Springfield Drug Company, as parties of the second part, entered into a written contract whereby the second parties agreed to buy the entire stock of merchandise contained in the Robertson Drug Store. Without setting out the contract at length, it may be said that it provided in substance for an appraisement made by men from designated drug firms in Louisville, and Cincinnati, each of the parties to select one of the appraisers; that the ap-

praisement should be made upon the present current wholesale market value of the merchandise and the purchase price should be the appraised value of the stock as determined by the appraisers. No value was to be fixed on goods found to be worthless by reason of age or obsolescence, and the appraisement of goods impaired was to be determined by the appraisers in accordance with their judgment at a reasonable and just value and not on the wholesale price. The last paragraph in the contract reads:

> "It is further agreed between the parties to this contract that the said building in which the drug store is now located shall not be rented or leased to anyone to operate a drug store in for a period of not less than five years from the date of sale. The first party further agrees to furnish free of charge the two rooms in the rear of the upstairs in the said building for a period of not more than twelve months in which to store merchandise perchased from the first party in this sale."

Men from the companies mentioned in the contract came to Springfield and made a list of the articles of merchandise in the store and set aside some of the stock as worthless. The appraisers notified the parties that it would take too much time to fix the value of the goods as provided in the contract as they made a list, and it was agreed by all that one of the appraisers should take the list of articles to Louisville and fix the value in accordance with the terms of the contract. This he did, and returned the appraisement to the parties within a week or ten days. In the meantime the second parties had divided the stock of goods and removed their respective parts to their stores in Springfield. The goods so removed by them were stored in a back room in their stores and some of it was placed on the shelves with the original stock. In August, 1933, the second parties instituted this action in equity against C. D. Robertson, Jr., administrator and individually, and in their petition, as amended, after setting out the provisions in the contract that the appraisers should be chosen from the companies mentioned therein, alleged that the defendant at the time of the execution of the contract knowingly and with an intent to deceive and to induce them to agree to such provision, fraudulently failed to disclose that the Robertson Drug Company was indebted to one of the companies from

which appraisers were to be chosen and by reason of such fraudulent concealment and deceit induced them to enter into the contract; that they relied on the belief that it would be possible to select competent and disinterested appraisers from these companies and selected as their appraisers George Hennis of McKesson-Peter-Neet-Richardson Company and the defendant selected E. Strothmeir of the Economy Drug Company of Cincinnati; that these appraisers estimated and appraised the stock of goods and determined the wholesale value thereof at $5,169.65; that the appraisers selected were biased and prejudiced against plaintiffs, and the wholesale value of the goods as determined by them was exorbitant and grossly excessive, and that they learned for the first tme in April, 1933, that the Robertson Drug Store was indebted to the companies mentioned in the contract; that as soon thereafter as they learned that the value as allowed by the appraisers was exorbitant and that they were about to be defrauded by the concealment and deceit of the defendant, they offered to return the stock of goods and demanded that defendant agree to a rescission of the contract, but that he refused to accept the merchandise and to cancel the contract. They further alleged that it was the understanding and agreement between the parties that they were only to acquire such articles of merchandise as were salable, and that they were not to pay any sum in excess of the fair market value of the articles purchased; that by oversight and mistake there was included in the inventory worthless and unmerchandisable goods, and that the fair market value of the stock of goods was overstated on account thereof in the sum of $1,886.62; that immediately upon the discovery of the overvaluation and the worthlessness of the articles, they tendered and offered to return the stock and to cancel the contract which defendant refused to do.

In the second paragraph of the original petition plaintiffs set out the last paragraph of the contract as above quoted and alleged that by mistake and oversight of the parties the contract contained the words "rent or lease," when the parties intended to say that the building should not be "rented or used by anyone to conduct a drug store;" that each of the second parties had an established business in Springfield and that the Robertson Drug Store was an established business therein at

the time the contract was made. They further alleged that C. D. Robertson, Jr., by himself or through his agent and others, had been and was at the time the action was instituted operating a drug store in the building referred to in the contract and was selling articles of merchandise in competition with plaintiffs, causing them irreparable loss and damage in the operation of their stores, and in the selling of the stock of goods acquired under the contract. They asked that the contract be canceled and set aside, or, if that could not be done, that the approved value of the goods be reduced $1,886.62, and that defendant recover on his counterclaim only the sum of $3,283.03; that the contract be reformed to express the true agreement between the parties that the Robertson Drug Store building be not used, rented, or leased by defendant or his heirs or assigns for a drug store or for the sale of merchandise in competition with plaintiffs, and that defendant individually and as administrator be enjoined and restrained from operating a store in the building referred to in the petition from which he sells any articles of merchandise similar to or of the kind sold by plaintiffs at the time they acquired the stock of goods.

By answer and counterclaim defendant denied all the allegations of the petition respecting fraud, concealment, or deceit in the selection of the appraisers; and denied that the value of the merchandise was to be fixed by any method other than as specified in the contract, or that the values fixed by the appraisers were exorbitant or overstated in any sum; and alleged that both of the appraisers were selected by plaintiffs, and that they were fair and impartial and competent; that, at the time the appraisers were selected, plaintiffs knew that defendant was indebted to the Louisville firm, and that George Hennis, the appraiser selected, had no financial interest in that firm. He made a general denial of the material allegations of the second paragraph of the petition and affirmatively alleged that the portion of the contract quoted in that paragraph was prepared by plaintiffs and their attorneys.

By way of counterclaim, it was alleged that the appraisers fixed the value of the stock of goods in the store at $5,169.65, and that the plaintiffs thereafter accepted the stock, took possession of and removed same from the building in which it was located, and that each

of them had refused to execute the notes for the purchase price as provided in the contract, or to pay any part thereof, and he prayed that the petition be dismissed and for a judgment against plaintiffs for a specific performance of the contract, and that they be required to make the payments in accordance with the terms thereof. By agreement of parties the affirmative allegations in the answer were controverted of record.

After evidence was heard in open court, it was adjudged by the chancellor in effect: (1) That plaintiffs were not entitled to a rescission of the contract nor to reformation thereof; (2) that C. D. Robertson, Jr., administrator, was entitled to a specific performance of the contract sued on and to collect from plaintiffs the sum of $5,169.65, divided into 24 monthly installments as provided in the contract, but that plaintiffs have credit by the value fixed on so much of the merchandise listed as worthless in the testimony of Frank Willett as might be returned within 10 days to defendant not exceeding the sum of $1,886.62, and that the installments be reduced accordingly. The injunction prayed for was denied, and the plaintiffs are appealing.

As grounds for reversal, it is argued by appellants: (1) That the methods and manner of valuing the goods was a constructive fraud; and (2) that the contract was entire and not divisible, and the lower court was without authority to reform it by reducing the purchase price.

As is shown by our recital of the pleadings and as stated in brief for appellants, rescission of the contract was sought on three grounds: First, that one of the appraisers was a creditor of the Robertson estate and therefore interested in the valuation that should be put on the merchandise; second, that a portion of the merchandise included in the inventory as merchantable was worthless; and third, that appellee was conducting a drug business in the Robertson building, contrary to the provisions of the contract.

Undisputed evidence discloses that appellants selected the drug firms from which the appraisers were to be chosen and called up these firms and requested them to send men to make the appraisement. Before entering upon their duties, the appraisers, in the presence of all parties concerned, were advised as to the

provisions of the contract concerning the way in which the appraisement was to be made. It was there agreed as to the trade discount to be allowed, and that instead of the appraisers dividing the stock between Frank Willett and the Springfield Drug Company, as provided in the contract, these parties should agree and make the division themselves. It was further agreed that, instead of fixing the value of the articles as listed, the list would be made and then taken to Louisville by George Hennis, and the value fixed by him there. Mr. Willett testified that he asked appellee if the Robertson Drug Store was indebted to the Louisville firm mentioned in the contract and that, while Robertson replied in the affirmative, he indicated that the amount due the firm could be met easily, and that he gained the impression from the talk that the amount due was of little consequence. Mr. Robertson testified that he had no conversation with Willett about this matter. It is admitted that the Robertson Drug Store owed the Louisville firm approximately $1,600, but Mr. Hennis, who was sent out by that firm to make the appraisement, testified that he had no financial interest in that company and was merely an employee in the city sales department; that he knew nothing of the indebtedness.

Counsel for appellants cite a number of cases to the effect that in contracts of this character it is not contemplated that either party will select a person to sustain his own view or further his interests, but that the appraisers will be distinterested, impartial, and free from bias. Included in the cases cited is the Continental Insurance Company v. Vallandingham & Gentry, 116 Ky. 287, 76 S. W. 22, 24, 105 Am. St. Rep. 218. That case involved a claim under a fire insurance policy for damage to goods by fire. The policy provided that in the event the insurer and the insured could not agree upon an adjustment of the loss, that two competent and disinterested appraisers, one selected by the insured and the other by the insurer, and the two thus selected should choose a competent and disinterested umpire. In condemning the appraisement made by the men thus selected, the opinion in referring to the appraiser chosen by insurer said:

"From the record we find that the person selected by appellants as their appraiser had served many times in that capacity before, and as many as three

times before for one of the appellants. This fact alone need not be inconsistent with his impartiality. But his conduct throughout this transaction was more like that of an employee than of a disinterested person. That he was brought from such a remote point, at great expense, undoubtedly, to the insurers; that he was willing, and even anxiously persistent, in serving their interests, as a partisan would.''

It is at once apparent that no such situation is presented in this case. Appellants themselves selected the appraisers and were acquainted with all the facts except as to the amount the drug store owed the Louisville firm. There is nothing to indicate that the collection of the amount due the Louisville firm would be materially affected by the appraisement of the stock of goods, if it had been valued in accordance with the ideas of appellants. Unquestionably the evidence sustained the chancellor's finding that appellants were not entitled to a rescission on this ground.

In arguing the second ground relied on for rescission of the contract, counsel cite a number of sections of the statute included in the Uniform Sales Act as applicable, but the contract itself will reveal that a number of the sections cited have no application. Mr. Willett, as well as Mr. Williams of the Springfield Drug Company, were registered pharmacists, and, as shown by their own evidence, experienced in the compounding and sale of drugs and medicines and articles usually carried in drug stores, and were acquainted with the values of such articles. It was contemplated, as is revealed by the contract, that some of the merchandise would be altogether unmerchantable, and that the value of some would be impaired by age, deterioration, etc. All this was provided for in the contract. It is shown that some articles were set aside as worthless, and that no value was fixed on such articles in the appraisement. After a list of the merchandise had been made by the appraisers, but before the values had been fixed by them, appellants divided the stock of goods as provided in the contract and removed and carried the merchandise in baskets to their respective stores. They thus had an opportunity to discover the condition of all the merchandise. Of course at this time they did not know the value that would be fixed by the appraisers, but

after removing the merchandise to their stores they left such as they considered worthless in a back room and placed the merchantable goods on shelves with their other stock, and, according to their evidence, had sold some of the stock purchased under the contract. The chancellor, in decreeing that appellants should be credited by the value of all articles claimed by them to be worthless, did nothing more than the contract provided should be done, except he accepted the value fixed on the stock by appellants rather than the value fixed by the appraisers, and this, notwithstanding the evidence of Mr. Hennis that the values were fixed in conformity with the terms of the contract.

Concerning the third ground relied on for reversal, the undisputed evidence shows that, although C. D. Robertson, Jr., is not a registered pharmacist, he is conducting a store in the building owned formerly by his father and is selling certain patent or proprietary medicines in unbroken packages and is selling drug sundries and many articles carried by appellants and other drug stores. It is his contention that this is not a drug store within the meaning of the law. Technically speaking, it may not be, but that question need not be considered in determining this ground for reversal. The evidence discloses that creditors of C. D. Robertson, Sr., were dissatisfied with the way the business was being conducted and had decided it was to the best interests of all concerned that the stock of merchandise be sold, and to this end they approached appellee with the proposition and he signified a willingness for them to find a purchaser. One of the creditors solicited Mr. Willett to buy the stock and another talked with Mr. Williams about the matter and an agreement evidenced by the contract was reached. Appellants testified that the predominating idea in making the purchase was to eliminate the third drug store in the town, and that this was understood by the creditors who were active in the negotiations. While Mr. Willett testified that the creditor who approached him gave him assurance that a drug store was not to be conducted in the Robertson building, the creditor who talked with him testified that they did have a conversation with reference to the elimination of a third drug store and he told Mr. Willett that C. D. Robertson was the one who would have to sign the contract. The contract was drafted and presented to ap-

pellants and they made objections to it because it contained no reference to the use of the Robertson building as a drug store. The last paragraph of the contract was finally drawn by an attorney representing appellants and was read to them and signed by them. It is couched in plain, simple terms, and no one could misunderstand its meaning or purport. It merely provided that the building should not be rented or leased for a drug store. Mr. Robertson testified that he would not have signed it if its provisions had extended further in this respect. In such circumstances, appellants are not in a position to ask for a rescission or for a reformation of the contract on this ground.

Some question is made concerning the mistake of the parties as to the right of appellee to burden the real estate with any covenant or restriction concerning its use, but it appears in evidence that the wife of appellee has purchased the building from the heirs of C. D. Robertson, Sr., and there is a covenant and condition in the deed that it shall not be rented or leased for a drug store within a period of 5 years, as provided in the contract.

The cancellation of a contract constitutes an extraordinary power of courts and should be exercised with great caution, and a judgment for rescission should not be granted except upon clear and convincing evidence. Cole v. Young, 167 Ky. 600, 181 S. W. 177; Peake v. Thomas, 222 Ky. 405, 300 S. W. 885; Rosa v. Nava et al., 235 Ky. 574, 31 S. W. (2d) 910; Bowling v. Bowling, 172 Ky. 32, 188 S. W. 1070.

If upon a review of the evidence by the appellate court it appears that the chancellor's finding is substantially supported by the evidence, or the evidence is such as to leave the mind in doubt concerning the truth of the controversy, the judgment of the chancellor should not be disturbed. Ford v. Ford's Ex'r, 233 Ky. 673, 26 S. W. (2d) 551; Rosa v. Nava et al., supra; Insurance Company of N. A. v. Evans, 229 Ky. 613, 17 S. W. (2d) 711; Fisher v. Fisher's Adm'r, 242 Ky. 262, 46 S. W. (2d) 85. Viewing the evidence in the light of the authorities, it is at once apparent that this court would not be authorized in disturbing the chancellor's finding.

Judgment affirmed.