## Davis et al. v. Carico.

(Decided Jan. 19, 1937.)

R. MILLER HOLLAND, LOUIS I. IGLEHEART and O. L. FOWLER for appellant.

T. F. BIRKHEAD for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

W. E. Davis, a resident of Daviess county, died

testate in December, 1929. At the time of his death he owned in fee simple two lots in the city of Owensboro, one improved with valuable business property and the other with an apartment house. Under his will Mr. Davis gave all his personal property to his two daughters and his real estate to his wife for life, but the personal property was not sufficient to pay indebtedness of the estate, and R. A. Wilson, son-in-law of testator, who was executor under the will, collected and applied rents from the real estate to the payment of testator's indebtedness.

The widow instituted this action, alleging that under the will she was entitled to the income from the real estate which had been applied to the payment of debts and asked for judgment for the sums so paid, and alleged that it would be necessary to sell one of the pieces of real estate to pay the indebtedness. She made the executor and the other beneficiaries under the will parties defendant and also made the Southern Trust Company and Lily Carico defendants, alleging that the Southern Trust Company had a mortgage on one of the pieces of real estate and that Lily Carico held a vendor's lien note of $1,000 against the other real estate.

By answer and cross-petition Lily Carico alleged that she had two vendor's lien notes of $1,000 each against one of the lots described in the petition. She did not file the notes with her pleading, but alleged that without fault on her part they had been lost. It appears from the record that Lily Carico and Ida Carico, her mother, conveyed one of the lots to Mr. Davis, and as a part of the consideration he executed ten notes for sums aggregating $12,000, due from one to ten years after date, respectively, the first six notes being for $1,300 each, the seventh for $1,200, and the eighth, ninth, and tenth for $1,000 each. The first four notes were paid as they fell due, and a release of the liens as to each of them was made on the margin of the deed when they were paid. On August 3, 1929, the following release was made on the margin of the deed:

"The fifth, sixth, seventh and eighth notes mentioned herein for $1,300 $1,300, $1,200 and $1,000 respectively having been paid and satisfied in full together with all interest thereon the lien retained to secure same is hereby released to that extent."

Before the action was instituted, Mrs. Ida Carico died, and it is alleged in the pleading of Lily Carico that she, as the only heir at law of her mother, became the sole owner of the notes. When the executor qualified, he found the fourth, sixth, seventh, eighth, and ninth notes in testator's bank box, but the fifth note was in the possession of Lily Carico.

In an amended answer and cross-petition, Lily Carico alleged that the statement in the original answer and cross-petition that notes 9 and 10 were lost or burned was a mistake, and that only note 10 was burned, and that note 9, referred to and set out in the deed from Ida Carico and Lily Carico, to W. E. Davis, was by mistake delivered to W. E. Davis at the time he made the last payment whereby he paid four notes aggregating $6,056, and that she delivered to W. E. Davis note 9 by mistake, when she should have delivered to him note 5, and that she did not know that note 9 had been delivered instead of note 5 until after the institution of this action, but had since discovered the mistake and had delivered to the attorney for plaintiff note 5.

On final hearing it was adjudged among other things that Lily Carico recover the sum of $2,000, ''being notes No. 9 and 10 mentioned in the pleading and evidence,'' with interest, etc., and it is from that portion of the judgment that the executor and the beneficiaries under the will are prosecuting this appeal.

The deposition of the executor was taken on interrogatories as if on cross-examination. He testified that note No. 9 was in Mr. Davis' papers at the time of his death, and to the best of his knowledge this note was transferred to John Trunnell and the principal and interest paid to him. He based his opinion on a canceled check which Mr. Davis had given to Mr. Trunnell for something over $1,000 in 1929. He further testified that Miss Carico in 1930 notified him that the interest was due on a $1,000 note remaining unpaid; that when he went to see her she told him all the notes had been paid except one; and that he owed one year's interest on that note. He further testified that W. E. Davis before his death told him he had paid all the Carico notes except one for $1,000. Miss Carico testified that note 5 was in her safety deposit box and, knowing it had been

paid, she took it to Mrs. Davis, who had it delivered to her attorney; that the tenth note was accidentally destroyed by her mother in her presence. She testified that she never had any transaction with Mr. Trunnell in connection with the Davis notes or otherwise. She denied that she told the executor that only one of the notes remained unpaid.

The court properly sustained exceptions to all of Miss Carico's evidence concerning her dealings or transactions with Mr. Davis, and we therefore refrain from detailing any of that evidence. Mr. Trunnell testified that he was a brother-in-law of W. E. Davis and a partner in business with him at one time; that he never saw or had in his possession a note for $1,000 or for any other amount executed by W. E. Davis to Ida Carico or Lily Carico, and that he did not know either of them. He testified that he had at one time loaned Davis $1,000 but could not recollect lending him any other sum.

Appellee took Mrs. Davis' deposition in which, among other things, the witness stated that a few weeks before his death Mr. Davis told her he owed Miss Carico $2,000, but the court sustained exceptions to this portion of the deposition. In the appraisement of the estate of Ida Carico only one note of $1,000 against the estate of W. E. Davis was listed. Mr. Wilson, the executor, also testified that he found in the safety box of testator a writing or memorandum signed by testator to the effect that all of the Carico notes except one had been paid, but that one of the notes had not been released of record. Appellee filed exception to a portion of the deposition of R. A. Wilson, but for some reason the court failed to pass on her exception.

As grounds for reversal it is first argued in substance (1) that the presumption of law is that a note in the hands of the maker has been paid, and in support of this contention Callahan v. Bank of Kentucky, 82 Ky. 231, 233; Callahan v. First National Bank, 78 Ky. 604, 39 Am. Rep. 262, and Endicott v. Stump (Ky.) 128 S. W. 76 are cited. In the second case cited among other things it is said:

"The note upon its face imported an indebtedness of the makers to Callahan, but being in the

makers' hands it did not import an obligation at all. Callahan's indorsement on the back of the note showed that it had been in his hands, but how or for what purpose it came again into the hands of the makers did not appear. The most reasonable conclusion is, we admit, that he indorsed it for their accommodation. This, however, is a mere inference of fact, and not a presumption of law. The presumption of law is that it was paid, and the liability of the indorser, if any had ever existed, was extinguished."

The second case cited and other cases bearing on the question that might have been cited are to the same effect.

It is further argued that this presumption of payment and the evidence tending to establish payment was not overcome by evidence for appellee, and therefore the court erred in adjudging that appellee recover on note 9.

Notes 5 to 9, inclusive, are found in the record. No. 5 bears indorsement, "Mrs. Ida Carico per L. C.," and No. 9 bears indorsement, "Mrs. Ida Carico per L. C. Miss Lily Carico." None of the other notes bear such indorsement. Note 5 evidently had at some time been pledged as collateral since, in addition to the indorsement, there were a number of pinholes in it indicating that it had been attached to other documents. The indorsement on note 9 might also indicate that it had been transferred or pledged to another. There is also filed as an exhibit a canceled check of W. E. Davis to Mrs. Lily Carico for $6,056, which recited that it was in payment of four purchase-money notes, and this check bears the same date as the releases of the four notes on the margin of the deed. The recital in the releases and the amount of the check clearly indicates that it was in payment of the fifth, sixth, seventh, and eighth notes, with interest from date. There is no explanation save that alleged by appellee as to why one note was not taken up by Mr. Davis when he took up the other three paid at the same time. There is likewise no explanation why, if the ninth note was in fact paid, it was not released promptly as the others were when paid. Unquestionably, if the ninth note was paid, it was after August 3, 1929,

when the four notes were paid and released, else it would have been included in that release. According to the allegations of the petition, Mr. Davis died on December 29, 1929, and certainly, if this note had been paid between August 3 and the date of the maker's death, some bank records evidencing the payment could have been found and none have been produced. The contention that this note had been transferred to Trunnell and paid to him is based on pure surmise upon the part of Mr. Wilson, the executor, and such contention is positively refuted by the evidence of Miss Carico and Mr. Trunnell. The record discloses that Mr. Davis was extremely careful in these transactions in seeing that releases were properly executed and in showing on his check that it was in payment of these notes; and, if he had paid the note after it had been indorsed or transferred to another, he would most likely have used the same precaution in making a check showing the payment.

As is manifest from what we have said, we are dealing with a very close question, and as an original proposition we might have reached a different conclusion from that reached by the chancellor; but this case demonstrates the reason for, and the wisdom of, the rule that the appellate court will not disturb the finding of a chancellor which is in accord with the weight of the evidence or where on the record as a whole the mind is merely left in doubt concerning the correctness of the chancellor's finding. Willett v. Robertson's Adm'r, 259 Ky. 199, 82 S. W. (2d) 289; Ford v. Ford's Ex'r, 233 Ky. 673, 26 S. W. (2d) 551; Kentucky Bankers' Ass'n v. Cassady, 264 Ky. 351, 94 S. W. (2d) 622.

Considering the evidence in the light of this well-established rule, we would not be authorized in reversing the chancellor's findings that the ninth note had not been paid.

Judgment affirmed.