## Cochran's Adm'x v. Yeiser et al.

June 4, 1943.

W. V. Eaton, C. C. Grassham, and L. B. Alexander for appellant.
Wheeler & Shelbourne for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

In Cochran's Adm'x v. Cochran, 273 Ky. 1, 115 S. W. (2d) 376, we expressed the conclusion that among other transactions the late W. E. Cochran had diverted the proceeds of the sale of property in Michigan to his son and daughter in fraud of the marital rights of his wife. A note for $3,816 received by Cochran as part of the proceeds had been transferred to his son, George A. Cochran, and the maker had paid him. We ruled that the widow was entitled to an accounting for her distributable share.

Mrs. Cochran, as administratrix and individually, brought David A. Yeiser and his mother, Mrs. Mary E. Yeiser, into the case by an amended petition, which was in the form of a plain suit on a promissory note for $3,816, due December 1, 1932, and unpaid, except $600. Failure to file the note was excused upon the charge that the defendants had wrongfully obtained its possession. The answer alleged that the note had been executed by Mrs. Yeiser; her son as her agent had been advised by the payee, W. E. Cochran, that he had disposed of the note to George A. Cochran; the plaintiff had been so informed, had made no claim to the note or objection to its being paid Cochran, and had permitted it to be paid him; and as administratrix she had subsequently caused his distributive share in the estate to be charged with the amount of the note and had caused the court to adjudge it proper. On this account the defendants pleaded estoppel. The plaintiff in reply traversed the allegations of the answer; charged that she had notified the defendants that the note belonged to the estate and insisted upon its being paid her; nevertheless, the defendants had paid Cochran without authority or right and wrongfully obtained possession of the note and were indebted to the estate for the amount thereof. She stated that only the amount of George A. Cochran's interest in the note as distributee, namely, $600, had been charged to him in the settlement of the estate, which sum had been credited on the note or claim being asserted against the defendants and thereby had reduced their liability in that amount. Mrs. Yeiser died while the case was pending and it was revived against her executor. The court rendered judgment adverse to the administratrix and widow and dismissed her amended petition against the Yeisers. She appeals.

The essential and decisive question is one of fact, namely, whether Yeiser paid the note to George A. Cochran with notice and knowledge that it belonged to the estate and not to him, or that he had a defective title thereto.

The possession of an endorsed negotiable instrument is presumptive evidence of ownership and prima facie evidence of the possessor's right to demand and receive payment, and payment to him will discharge the obligation when made in good faith and in ignorance of facts which impair his title. 9 Am. Jur., Bills and Notes, secs. 848, 1011, 1018; Hargis v. Louisville Trust Company, 30 S. W. 877, 17 Ky. Law Rep. 218; McCarty v. Louisville Banking Company, 100 Ky. 4, 37 S. W. 144, 18 Ky. Law Rep. 569; Gibbs v. Metcalf, 201 Ky. 504, 256 S. W. 1109. There is also a presumption that the note has been paid when it is in the possession of the maker. Davis v. Carico, 267 Ky. 334, 102 S. W. (2d) 8; Byington v. Baughman, 282 Ky. 130, 137 S. W. (2d) 1101. It is not disputed that this note was in the possession of George A. Cochran and that the maker of the note had paid him and had it in her possession through her son and agent. Therefore, the burden was upon the administratrix to prove that the note had been paid wrongfully or with notice of George A. Cochran's defective title.

Mr. Yeiser had been vice president of a bank in Paducah, as was also Mr. Cochran, and they were close personal friends. However, he had severed his relationship with the bank at the time of the transactions involved. His mother was more than 80 years old and he had handled her business.

Mrs. Cochran testified that upon her inquiry Mr. Yeiser had told her about the Michigan property transaction about two weeks before her husband's death, when he was in Arkansas, where he had gone to establish his residence and sue for divorce. About two weeks after his death and her qualification as administratrix, she testified, Mr. Yeiser told her at the Palmer Hotel that he and his mother had given a note for over $3,000 for the property and that George A. Cochran held it and was insisting that he pay him. He asked what he should do about it and she told him not to pay it; that she would see her attorney whether she should accept payment and would talk to Yeiser the next day at the same time and place. He responded, "Very well."

In the proceeding to set aside the transfer of Cochran's property in fraud of his wife, the widow and administratrix had taken Mr. Yeiser's deposition. That was in 1935. There was then apparently no idea of endeavoring to hold him or his mother liable for payment of the note to George A. Cochran without right to do so. Mr. Yeiser's testimony then given is related in part in Cochran's Adm'x v. Cochran, supra. He deposed then that he had talked with Mr. Cochran before he went to Arkansas about the note and told him he was not able at the time to pay it and suggested that he would surrender the property and lose what he had paid on it. Cochran replied that he would cancel the interest; that he had disposed of the note and he, Yeiser, would be dealt with all right and need not worry as the party who held the note understood that he was not then able to pay it. Cochran declined to tell him who had the note. After his death, Yeiser paid George A. Cochran in currency, received the note and destroyed it as was his custom with paid notes. That deposition was considered a part of Yeiser's testimony in this case. In a later deposition he testified that the only conversation he ever had with Mrs. Cochran about this matter was at his home a short while after Mr. Cochran's death, when he had told her what he knew about the transfer of the Michigan property and about his mother's note. He told her that he was concerned about the note and that Mr. Cochran had told him he had disposed of it. He told her he did not know who had the note and she responded that she did not know either. That was his only conversation with Mrs. Cochran, and she never at any time or any place objected to his paying George A. Cochran or notified him not to do so or made any claim to the proceeds of it. George Cochran had made demand upon him for the payment of the note and he had sold the Michigan property for $3,000 in cash, which he collected in currency at Chicago, kept it in a safety deposit box in Paducah for a time, and then paid it to George Cochran. He gave him his own individual note for the balance of between $250 and $300, which was paid within a few months. It is indicated that the difference was a reduction made because of the loss suffered in the investment and the depressed financial conditions. Yeiser testified that he understood Cochran had gone to Arkansas to obtain a divorce but did not know anything about Mrs. Cochran claiming her husband had voluntarily transferred his property. He did

not learn of this until a short while before he gave his first deposition in 1935. In rebuttal of Mrs. Cochran's deposition, which had been taken after Yeiser's last one, he categorically denied having had any conversation with her at the Palmer Hotel or any where else about the note, except at his home as above described.

We are thus confronted with an irreconcilable conflict in the testimony of the two witnesses. The appellant draws conclusions of knowledge on the part of Yeiser that George A. Cochran did not have good title to the note and attaches some suspicion to the manner of payment and other circumstances. Yet, she disavows any intention of charging him with fraud. Both parties are interested and they stand upon an equality of veracity and integrity. The conversations occurred eight years before the testimony was offered, except Yeiser's first deposition, at which time the matter of attaching liability upon him was probably not thought of by either party. There are two things to be put in the scales in behalf of the appellees. One is that Mr. Yeiser was a banker of long experience and doubtless practiced the traditional caution of such men in dealing with negotiable paper. Doubtless he would have realized that he might become liable to the estate had he been given notice or warning not to recognize George A. Cochran's possession as authority to collect the note. The other is the presumptions to which we have referred and the burden resting upon the administratrix to establish the contrary. The balance is tipped by the regard to be given the finding of fact by the chancellor when the mind of this court is left in doubt.

The matter of estoppel and other questions, of course, need not be considered

The judgment is affirmed.